109 So.2d 131

**DEPARTMENT OF INDUSTRIAL RELA-TIONS and Stockham Valves and Fittings, Inc.**

v.

**Homer B. WALKER and Samuel Danzy.**

**6 Div. 994.**

Court of Appeals of Alabama.

Feb. 21, 1956.

Rehearing Denied May 8, 1956.

J. Eugene Foster and Richard S. Brooks, Montgomery, for appellant Dept. of Industrial Relations.

E. L. All, Jas. C. Blair and White, Bradley, Arant, All & Rose, Birmingham, for appellant employer.

Cooper, Mitch & Black, Birmingham, for appellees.

PRICE, Judge.

This is an appeal from judgments in the Circuit Court of Jefferson County, awarding unemployment compensation to both appellees, plaintiffs below. The actions were tried jointly and the appeals have been consolidated.

Appellees' claims were denied in the administrative processes of the applicable law. In the circuit court the causes were tried by the court without the intervention of a jury.

The question here is whether the appellees' unemployment was directly due to a labor dispute, as that term is used in Subd. A, § 214, Tit. 26, Code 1940, as amended.

The tendencies of the evidence may be summarized as follows:

Stockham Valves and Fittings, Inc., is engaged in the manufacture and sale of castings and fittings. Its plant consists mainly of a Malleable Foundry where the fittings are cast and a Mechanical Finishing Department.

After they are cast, the fittings are run through an annealing oven to render them flexible and tougher, and then they move on to the finishing department, where they are machined and checked for commercial use. The production is geared so that it takes about eight days from the time a fitting is cast in the Malleable Foundry before it reaches the Mechanical Finishing Department.

In April of 1953 there was no back-up of fittings in progress, the operation was a continuous one, and if the Malleable Foundry were shut down for a week the finishing department, in due course, would have a week when there would be no material upon which to work.

In January, 1953, the company purchased a new-type annealing oven, which does the work of all the old-type ovens. It cost approximately $260,000 and the new building erected to house it cost $90,000. The annealing oven is a very intricate and complicated piece of machinery. It is operated 24 hours a day, seven days a week, by a crew consisting of one operator and one helper each shift, but because of the continuous operation there are four regular crews who work staggered eight-hour shifts. The oven annealed about 200 tons per week.

Appellee Danzy worked as a molder in the foundry. Appellee Walker worked in the finishing department. Both Danzy and Walker were members of the United Steel Workers of America, C.I.O., which union had a contract with the Stockham Company. The union was the duly certified bargaining agent of appellees. The expiration date of the contract was April 30, 1953. The union notified the company that it desired to negotiate a new contract for the period after April 30th and, beginning on March 3rd, the company and the union held about fourteen conferences, each lasting around two hours, in an effort to reach an agreement as to a new contract.

Mr. L. B. Bewley, Director of Industrial Relations for Stockham Company, was in charge of conducting the negotiations for the company. He testified that among the union demands for changes in the existing contract were a union shop; a wage increase; an increase in paid vacations; a change in the seniority clause and a change in grievance procedure.

Mr. C. R. Armstrong, President of the Local, was in charge of conducting negotiations for the union.

Early in April it was brought to Mr. Bewley's attention that in the event of a strike several days would be required to cool the annealing oven. The oven had a required cycle of some 38 hours from the time fittings were placed in it until they were pushed out at the other end, and would require some twenty hours to cool

it after the cycle was completed. If it were not cooled properly, not only would any fittings left in it be badly damaged, but the brick work inside and the high alloy track would also be ruined. It was estimated that the cost to repair the oven would probably amount to $100,000, and there was grave danger of an explosion.

Mr. Bewley testified he presented this problem to the union negotiators at a meeting held the first week in April and explained that men would be needed to properly cool the oven in the event of a strike. At a later meeting, which Mr. Bewley thought was held on April 9th, but which Mr. Armstrong stated in his judgment was April 15th or 16th, Mr. Bewley requested that the union agree to permit the regular oven crews to pass through the picket line to close down the oven after the commencement of the strike, if a strike should occur.

Both Mr. Bewley and Mr. Armstrong stated that a list was submitted which contained the names of the four regular oven operators and four regular helpers, and which also contained a promise that these eight men would be permitted to cross the picket line to their work. During the discussion it developed that two of the men on the list were not union members.

Mr. Armstrong testified that Mr. Bewley was told that the union would take the responsibility for the union men, but that the union would not take any responsibility for any damage which the non-union members might do to the company's expensive equipment, and that he was unwilling to sign anything that would permit the non-union operators to cross the picket line.

Mr. Bewley testified the union representatives stated the union would not assume any responsibility for the safety of the non-union men in crossing the picket line. He also stated when no agreement was reached concerning the list, that he suggested that the union agree that the foreman or other supervisory men close down the oven after the commencement of the strike, but the union negotiators declined to agree, because it was contrary to C.I.O.

policy to permit supervisors to do any production work.

Mr. Bewley testified that union representatives had stated at several of the meetings "no contract, we don't work" and he told the union negotiators at the meeting on April 21, that unless an agreement were reached concerning the oven, the company would be compelled to close the oven down prior to April 30, which would require closing of the Malleable Foundry on April 27, since the company had no facilities for storing the output of the foundry prior to its being annealed.

The company had owned this oven for only three months, and the problem concerning the care of the oven in the event of a strike had never before arisen.

Company and union witnesses testified that on April 23 no agreement had been reached on many of the major differences between the company and the union.

The Malleable Foundry and Mechanical Finishing Department were on a four-day, thirty-two hour, work week. The work week was Monday through Thursday. On Thursday, April 23, the last working day in the week preceding the work week ending April 30, appellee Danzy and the other employees in the Malleable Foundry were told the foundry would be closed the following week, commencing Monday, April 27.

At 4:00 o'clock A. M. Wednesday, April 29, the last of the production of the Malleable Foundry through the previous Thursday was taken out of the annealing oven, and the oven was cooled sufficiently to be left unattended by 11:00 o'clock P. M., Wednesday, April 29.

On Thursday, April 30, appellee Walker and the other employees in the Mechanical Finishing Department were told that that department would be closed the following week, commencing May 4, 1953, inasmuch as Danzy and the other workers in the foundry did not make any fittings the week

beginning April 27, and, as previously stated herein, there was no back-up of unfinished fittings. Walker was told if there was no strike to come back to work one week later, and if there was a strike to come back to work one week after the strike was over, since no fittings would reach the finishing department until the oven and foundry operated for a sufficient length of time for the fittings to be cast, annealed and otherwise processed. Walker worked through Thursday, April 30th, the last work day in that week.

No agreement having been reached on the terms of a new contract, a strike was called by the union at the expiration of the old contract, effective at 12:01 A. M. May 1st. The strike lasted until August 26, 1953.

Upon the termination of the strike all employees in the Malleable Foundry and in the Mechanical Finishing Department, including Walker and Danzy, returned to work on the first work day. Walker and the other employees in the finishing department did not lose a week after the operations were resumed, because during the strike defective fittings were found in stock which had to be returned to the Finishing Department to be re-worked.

Appellee Danzy claims compensation beginning with the week commencing April 27, 1953. Appellee Walker claims compensation beginning with the week commencing May 4, 1953.

In brief counsel for appellees urge that the lay-offs were due to a lack of work rather than to the labor dispute; that the "operations of the entire plant were, at the time in question, proceeding upon a reduced basis due to lack of business demand"; and that the employer's statement to the Department of Industrial Relations gave as the reason for Danzy's unemployment "Laid off temporarily for one week due to no work available."

Mr. Montgomery, Sup't of the Production Control for Stockham, testified, in substance, that in April the company had a backlog of orders, and on April 26 cus-

tomers' orders amounted to 65 tons. Some of the products are kept in stock, and other items are made only on order. On cross-examination he testified that although theoretically it might appear that 65 tons was less than a day's work, actually it might take a month to run the different kinds of material. As of April 26 the company had orders for seven weeks ahead.

Mr. Hawkins, Superintendent of foundries for the employer, testified that in March of 1952 the company began operating five seven-hour days or thirty-five hours per week, and in March of 1953 it began to operate four eight-hour days or thirty-two hours per week. He stated the change was made because the men preferred to work four eight-hour days instead of five seven-hour days, because it saved them one day's car fare and they could get other jobs on the last days of the week.

This evidence was uncontroverted.

In the recent case of Department of Industrial Relations v. Savage, Ala.App., 82 So.2d 435,[1] we quoted from the holding of the Supreme Court in Ex parte Pesnell, 240 Ala. 457, 199 So. 726, to the effect that in order to establish "labor dispute" precluding a recovery of unemployment benefits, it is not necessary that "there be a strike or lockout." See also 81 C.J.S. Social Security and Public Welfare, § 176, p. 264. The statute itself provides " * * * for the purposes of this section only, the term 'labor dispute' includes any controversy concerning terms, tenure or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment." Subd. A, Sec. 214, Tit. 26 Code.

 We are of the opinion that the evidence clearly establishes the existence of a labor dispute concerning terms, tenure or conditions of employment at the plant of Stockham Valves and Fittings from March 3, 1953, and that appellees' unemployment

was directly due to such labor dispute, as the term is used in the statute, supra.

Under the evidence, it is our opinion, Stockham was authorized, in anticipation of a strike, to take proper measures for the protection of its property from damage during the pendency of the strike. Department of Industrial Relations v. Savage, supra; Ablondi v. Bd. of Review, 8 N.J.Super. 71, 73 A.2d 262; Climax Fire Brick Co. v. Unemployment Bd. of Review, 166 Pa.Super. 481, 72 A.2d 300; Bako v. Unemployment Comp. Bd. of Review, 171 Pa.Super. 222, 90 A.2d 309.

The judgment of the trial court is reversed and the cause is remanded.

Reversed and remanded.