114 So.2d 565

**UNITED STATES STEEL CORPORATION**

v.

**Willie L. GLASGOW and Department of Industrial Relations.**

**6 Div. 575.**

Court of Appeals of Alabama.

March 25, 1958.

Rehearing Denied May 13, 1958.

Affirmed After Remandment Sept. 1, 1959.

Rehearing Denied Sept. 15, 1959.

———◆———

Burr, McKamy, Moore & Thomas, Birmingham, for appellant.

Cooper, Mitch & Black, Birmingham, for appellees.

CATES, Judge.

Glasgow worked for appellant at its Fairfield Wire Works, T. C. I. Division. He was unemployed July 29–August 12, 1955, when the conductors of appellant's Rail Transportation Department struck. He wants to be paid unemployment insurance. Appellant contests the claim, alleging him to be disqualified under § 214(A) of the law.

We have decided several companion cases today to which reference may be had. 114 So.2d 553 and 532.

Affirmed on authority of Usher v. Department of Industrial Relations, 261 Ala. 509, 75 So.2d 165.

Affirmed.

#### After Remandment

Glasgow was a member of the United Steel Workers of America, which parent union also took in the conductors who were on strike.

■ A labor dispute is not disqualifying unless it occurs at the same establishment in which the claimant is last employed. See Gardner, C. J., in Tennessee Coal, Iron & R. Co. v. Martin, 251 Ala. 153, 36 So.2d 547.

Glasgow's place of work, the Fairfield Wire Works, was built about 1908 or 1909 by the American Steel and Wire Company, a subsidiary of United States Steel Cor-

poration. In 1937 the wire works were transferred to the Tennessee Coal Iron & Railroad Company.

The Rail Transportation Department of the T. C. I. Division of U. S. Steel Corporation does not serve the wire works. Access to the wire works is had by way of truck or common carrier by rail, the Birmingham Southern, a wholly owned subsidiary of U. S. Steel Corporation.

Mr. J. M. Spearman, the vice-president in charge of operations, which included manufacturing and "raw materials," explained how the company grew up around the Ensley works where steel was first made in Alabama on Thanksgiving Day, 1899. Then during World War I the company set up the Fairfield Steel Works.

On being asked the reason for the location of the Fairfield Steel Works, Mr. Spearman said:

"That was the closest acreage of the size required to build the steel plant. There was no room after you left Ensley until you got to Fairfield and I started to say in 1910 the Coke Plant had been built at Fairfield and the only vacant property that could be used was bought there."

His testimony continued:

"After the war [World War I] Fairfield continued to grow and then the Merchant Mill and the Cotton Tie Mill was built and that completed the Fairfield Steel Works manufacturing.

"The next operation was the Sheet Mill in this area. That was built following the Merchant and Cotton Tie Mills. At that time the so-called 21 inch Bar Mill was built on part of the Blooming Mill.

"The next expansion following the Sheet Mill was the Tin Mill in 1936 and 1937 and then the Hot Strip Mill * * *"

The effect of this testimony and that of Mr. Roman J. Meyer was used by the cor-

poration to argue that the Rail Transportation Department was, in effect, an integral part of the manufacturing operations of the corporation.

Thus, Mr. Meyer, as manager of Manufacturing Operations, had under him the following:

"The Central Water Works, Ensley Steel Works, Rail Transportation, the Coke Works, Fairfield Steel, Fairfield Tin, Fairfield Wire, Fairfield Sheet Mill and Bessemer Rolling Mill."

Some 15,803 employees were grouped in manufacturing operations. Of these, the bargaining units involving the Rail Transportation Department, including Rail Transportation Shops, embraced 941 workmen. The Rail Transportation Department extended across Jefferson County for some thirty miles with over two hundred miles of tracks.

Some of the work at the steel mills, such as the removal of slag from the blast and open hearth furnaces, is necessarily dependent upon rail transportation. Carrying molten iron from the blast furnaces to open hearth furnaces also requires railroad equipment.

After a shut down of rail transportation, the wire works could continue operation as long as its stock pile held out. Output was about 9,000 tons of wire, wire rods and nails a month.

When asked how does the wire works get transportation from the Birmingham Southern, Mr. Meyer answered, "They order cars through our traffic department and Birmingham Southern sends them in there."

Upon pronouncing judgment, the trial judge made the following oral remarks:

"* * * You have a situation of a Union in the Rail Transportation Department a U. S. W. Union striking, and other employees, not employees of that [local] union, but employees of other locals of the U. S. W. have been

thrown out of work, resulting from that. Now, you might have the proposition of the establishment doctrine coming into play here. If the Usher case does not apply under the theory advanced by the T. C. I. that all of these members were, employees were, in the eyes of the law, members of the same union, then the proposition would be whether or not the Rail Transportation Department, where the striking union was employed, or the members were employed, whether that is a separate establishment within the meaning of the Unemployment Compensation Act.

"Under the Burney Martin Case, of course, it doesn't cover this situation precisely, I realize that; you have got other evidence here in this case that they didn't have in that case apparently. You may have generally the same manner of operation of the T. C. I., and you may have some additional evidence of functional integration here that you did not have in the Burney Martin Case, but I would hold that that case does apply, and that the effect of it is that as far as these 1955 cases are concerned, that I would have to treat it as a separate establishment * * *."

Under § 213 of the unemployment insurance law, the claimant is required to show himself eligible. Under § 214, subd. A, the burden falls on either the Director of Industrial Relations, as trustee, or the employer with an adverse interest to show that an eligible claimant is disqualified.

■ The strike was in the Rail Transportation Department and the employer had to establish by the preponderance of the evidence to the reasonable satisfaction of the trial judge that the Fairfield Wire Works was part of the same establishment.

■ We consider there was sufficient legal evidence to support the judgment below.

Affirmed.