EMBRY, Justice.
These are unemployment compensation cases which come to this court by writ of certiorari from the Court of Civil Appeals. The primary issue revolves around § 25-4-78(1), Code of Alabama, 1975. Under this statute an employee is disqualified from receiving unemployment compensation benefits when his unemployment is “directly due to a labor dispute still in active progress in the establishment in which he is or was last employed.”
The record, in pertinent part, reveals the following: Appellants are employees of Alabama Dry Dock and Shipbuilding Company (ADDSCO) and members of Local 18 of the Industrial Union of Marine and Shipbuilding Workers of America, AFL-CIO (“the Union”). The Union and ADDSCO were parties to a three-year collective bargaining agreement covering the terms and conditions of employment of ADDSCO’s Mobile shipyard.
As required by the terms of the agreement, the Union gave notice to ADDSCO on 2 March 1979 of its desire to reopen and renegotiate the terms and conditions of the contract. On that date, approximately 1,329 persons were employed by ADDSCO; all except 300 of those employees were members of the collective bargaining unit represented by the Union.
Soon after notice was given by the Union of its intention to renegotiate the contract, ADDSCO began to refuse to take new work into the yard and to reject work for which it had already contracted. In addition, customers declined to put their ships in the yard because they feared the ships would remain there after a strike had begun and would not be handled by members of other unions. Because of lack of work, occasioned by these circumstances, ADDSCO began to lay off employees. By 4 May 1979, approximately 700 employees had been given temporary layoff notices.
Between 22 March and 2 May 1979 the Union and ADDSCO had sixteen negotiating meetings. The Union and employer made substantial progress toward agreements in working conditions, but little or no progress as far as wages.
ADDSCO gave the Union its final offer on 2 May 1979, and a final bargaining session was held on 4 May 1979. On the same day the last ship, S/S Gulf Pride, left the yard, leaving no work for bargaining unit employees. The Union took a strike vote at 9:00 A.M. on 5 May, and picket lines went up sometime thereafter.
Temporary layoff notices were issued to the remaining employees on 7 May 1979, after the strike had begun. No employees were called back to work by ADDSCO until the strike ended some 89 days later.
Appellants Ross, Webster, and Mayo received temporary layoff notices on 20 April, 3 May, and 4 May respectively. The remaining parties received notices on 7 May, after the strike had begun. All parties filed claims for unemployment compensation benefits with the Department of Industrial Relations.
Appellants Flowers, Jordan, Lynch, and Demetropolis were denied unemployment compensation benefits. They filed suit for review in the Mobile County Circuit Court. Appellants Ross, Mayo, Leslie, Chancellor, and Webster were granted unemployment compensation benefits. ADDSCO filed suit for review of the latter’s claim in the Mobile County Circuit Court. That court entered judgment on 23 March 1981, denying unemployment benefits to all claimants.
*78 The Court of Civil Appeals affirmed, stating:
“At the time of the first layoff on April 20, the facts of this case justify the trial court’s conclusion that there was a labor dispute in active progress. The union and ADDSCO had met at the bargaining table several times without success ....

“We find that appellants’ unemployment was ‘directly due to a labor dispute in active progress’ under § 25-4-78(1), Code 1975, thus disqualifying all appellants from receiving unemployment compensation benefits.”
This review by certiorari followed:
The issue on review, stated as succinctly as possible, is whether a labor dispute existed and was actively in progress between the employer and the employees represented by the Union when appellants were given layoff notices; and, whether the unemployment of appellants was due to the labor dispute so as to mandate their disqualification pursuant to § 25-4-78(1), Code of Alabama, 1975.
The ore tenus rule usually applies in unemployment compensation cases, but that rule has little application in this case because the material facts are substantially undisputed. See Steele v. Carter, 390 So.2d 299 (Ala.Civ.App.1980). Also relevant, is the rule in Holmes v. Cook, 45 Ala.App. 688, 236 So.2d 352 (1970), that the “provisions of disqualification from benefits [in the Unemployment Act] should be narrowly construed.” A further guideline for our consideration of these claims is the procedural rule which provides that the employer has the burden of proving any disqualification under this subdivision of the Unemployment Compensation Act. See United States Steel Corp. v. Glasgow, 40 Ala.App. 424, 114 So.2d 565 (1958), rev’d on other grounds, sub nom. United States Steel Corp. v. Curry, 269 Ala. 8, 114 So.2d 532 (1959).
As noted, both the trial court and the Court of Civil Appeals held each of the appellants’ claims to be barred by § 25-4-78(1). The trial court’s holding was based on Department of Industrial Relations v. Pesnell, 29 Ala.App. 528, 199 So. 720 (1940), aff’d sub nom. Ex parte Pesnell, 240 Ala. 457, 199 So. 726 (1940), cert. denied 313 U.S. 590, 61 S.Ct. 1113, 85 L.Ed. 1545 (1941). In the excellent brief submitted by the Alabama Labor Council, as amicus curiae, Pes-nell was correctly distinguished from the present case:
“... In Pesnell, negotiations were continuing between the union and the employer but the employees, coal miners who historically followed the principle of refusing to work without a contract, did not work despite the fact that no strike had been called and the employer had not engaged in a lockout. The Court of Appeals explained that the Legislature never intended for a member of a union to draw unemployment benefits while his bargaining agents were discussing a proposed contract where the union had itself directed that all work cease until its bargaining terms were met. The Court said:
“ ‘... Voluntary idleness during discussion, by appellee’s agents (the Union), of a proposed contract, can hardly be termed unemployed. Negotiation itself may be a form of dispute....’” [Department of Industrial Relations v. Pesnell, 29 Ala.App. 528, 199 So. 720].
“Thus, Pesnell involved a case where the actual unemployment was due either to the union’s direction that its members not work or due to the philosophical refusal of the employees themselves to work in the absence of a contract. Work was available and simply was not performed and Pesnell has no applicability here.”
The appeals court relied on the cases of Department of Industrial Relations v. Walker, 40 Ala.App. 1,109 So.2d 131 (1956), and Department of Industrial Relations v. Savage, 38 Ala.App. 277, 82 So.2d 435 (1955), to support its holding that a labor dispute was in progress at the time of the first layoffs. These cases are correctly distinguished in the amicus brief:
“In Walker, the unemployment was caused when the union refused to allow *79 its members to-cool down an expensive, complicated oven in the event a strike was called. The employer shut down the oven and laid off employees some four days before the expiration date of the collective bargaining agreement. The Court held that the employer had a right to protect its property and that the layoffs were directly due to the labor dispute surrounding the cooling of the ovens.
“Similarly, Savage involved a situation where although the contract had expired, employees were working without a contract. When the union insisted that no employees would stay on to ‘burn off kilns that had not completed the burning cycle if a contract was not signed by a particular date, the employer laid off employees as soon as cycles were completed. Again, the Court found this unemployment was directly due to a labor dispute.
“Significantly, in both cases work was available for employees to perform.”
The controlling law of the cases sub judi-es is set forth by the Alabama Court of Civil Appeals in Gulf Atlantic Warehouse Co. v. Bennett, 36 Ala.App. 33, 51 So.2d 544 (1951), and Department of Industrial Relations and Alabama Dry Dock and Shipbuilding Co. v. Headon, 42 Ala.App. 132, 155 So.2d 123 (1962). These cases are factually similar to those under consideration. The employer’s contention in Gulf Atlantic Warehouse was stated as follows in the appellate court’s opinion:
“The company’s counsel in brief poses the question for our review in this succinct manner:
“ ‘It was appellant’s contention before the trial court ... that a labor dispute was created and existed between the Union representing the majority of appellant’s employees and appellant from the commencement of the labor contract negotiations, or at least from the date of termination of the old contract (July 31, 1949), and continued until April 27, 1950, the date of execution of the next subsequent collective bargaining agreement. There can be no argument as to this matter. But appellant further contends, and this is the crux of the case, that the lack of business during August, 1949, which caused ap-pellees’ unemployment, resulted directly from the existence of this labor dispute, hence that the unemployment was directly due to a labor dispute within the meaning of the disqualification provision of Section 216 [subd.] A of Title 126, Code 1940.’ ” (Emphasis added.)
36 Ala.App. at 34, 51 So.2d 544.
That court rejected this contention stating:
“We have read with a great deal of interest an article, ‘Unemployment Compensation in Labor Disputes, Yol. 49, The Yale Law Journal, pp. 461-491. This article is authored by Herbert A. Fierst, member of the New York Bar, and Marjorie Spector, Economist, Bureau of Research and Statistics, New York Division of Placement and Unemployment Insurance. On page 484 we find this statement:
“ ‘The decisions dealing with the causal relationship between the labor dispute and the loss of employment or stoppage of work bear all the earmarks of the metaphysical torts nemesis: when does an intervening force break the chain of proximate cause?
“ ‘The stoppage of work must be due to the dispute. If operations would have ceased in any event, because of economic conditions or the advent of the slack season, no disqualification is applied despite the obvious existence of a labor dispute. And when the stoppage is no longer due to the dispute but to economic conditions, loss of contracts, cancellation of orders or liquidation of the business by the employer, disqualification is lifted.’
“Under footnote 148 of this page the authors refer to the following statement from Ind.Bd.Rev. No. 39-LDR-5 (Nov. 18, 1939):
“ ‘Similarly, where an employer, in anticipation of a strike, stepped up pro *80 duction to such an extent that at the time fixed for the strike, further production was impossible, held, cessation of work not due to labor dispute.’
“We find ourselves in accord with this observation.
“In the case at bar the cessation of work was not due to overproduction, but rather underproduction. This latter condition, however, was due to the company’s apprehension of a strike or work stoppage and on this account its customers ceased active business relations with the warehouse. The unemployment was directly due to a misapprehension of the customers and not to a labor dispute between the claimants and the company.
“According to Webster’s New International Dictionary, Second Edition, ‘directly’ means ‘in a direct manner; in a straight line; without deviation of course; wholly; completely, in a direct way; without anything intervening.’
“In the instant case an agency independent of the labor dispute intervened and became the cause of the unemployment. Under such circumstances it cannot be logically deduced that the time of unemployment, for which compensation is sought, was ‘directly due to a labor dispute.’ ” (Emphasis added.)
36 Ala.App. at 35, 51 So.2d 544.
In Headon, ships were removed from the employer’s shipyard because customers feared that their ships would be caught in the yard during a strike. As less and less work became available, employees were laid off. In that case, the Court of Civil Appeals, relying on the Gulf Atlantic rationale, held that the reduction of the work force was not due to a labor dispute, but was due to “customer apprehension.” The facts in Headon are hardly distinguishable from the facts in this case.
We agree with the above decisions that the relevant question when considering disqualification under the statute in question is whether the proximate cause of unemployment is the labor dispute. We further opine that the legislature did not intend that § 25-4-78(1) should act to disqualify employees given layoff notices from receipt of unemployment benefits where contract negotiations are ongoing. For us to so hold would give employers involved in the negotiations over union contracts the opportunity to use their economic position as a bargaining tool during the period prior to the expiration of the contract. This concept was advanced by the Indiana Supreme Court in its confrontation with a similar statute and factual pattern. Of its decision to allow claims for unemployment benefits where employees were laid off during contract negotiations, that court stated:
“To hold otherwise would be to defeat the purpose of the law. Such an interpretation would defeat the objective of contract negotiation in all industries. To promote the general welfare it is necessary and in the interest of public policy to encourage good faith collective bargaining at all times. If we were to interpret every difference of opinion between employer and employee as a labor dispute we can perceive a situation where no one could receive unemployment benefits and labor-management relations would be in chaos.” (Emphasis added.)
Bootz Manufacturing Co. v. Review Board of Indiana Employment Security Division, 143 Ind.App. 17, 237 N.E.2d 597 (1968).
A review of the facts in this case makes clear the direct cause of the layoffs, prior to the Union’s vote to strike, was shortage of work caused by apprehensions on the part of both the employer and its customers as to delays in performance or work which might result should the strike occur. Appellants Ross, Mayo and Webster were laid off while negotiations were active and in progress. Their unemployment was not directly due to a labor dispute, but to work shortage. The appellants Flowers, Jordan, Lynch, Demetropolis, Leslie, and Chancellor were laid off after the Union took a strike vote. They are not entitled to receive benefits because their unemployment was directly due to a labor dispute.
AFFIRMED IN PART, REVERSED IN PART; AND REMANDED WITH DI *81 RECTIONS TO ENTER JUDGMENT CONSISTENT WITH THIS OPINION.
TORBERT, C.J., MADDOX, FAULKNER, ALMON, SHORES, BEATTY and ADAMS, JJ., concur.
JONES, J., not sitting.