60 So.2d 692

### McLEOD et al. v. WILLARD.
### I Div. 491.

Supreme Court of Alabama.

Oct. 9, 1952.

J. Terry Reynolds, Jr., Maurice A. Downing and Reynolds & Downing, all of Mobile, for appellants.

Jere Austill, Mobile, for appellee.

SIMPSON, Justice.

Bill by Robert R. and Ben L. McLeod against Ebner E. Willard for an accounting of a partnership theretofore existing between them known as Holcombe Avenue Grocery. From an adverse decree after a

hearing before the judge without a reference, the complainants have appealed.

■ We will first observe that although by the decree of the lower court the complainants were denied relief and the bill was dismissed, an accounting was actually undertaken between the parties, the testimony having been given *viva voce* in open court, with various exhibits being introduced. We have often observed that this is not the better practice, since "matters of accounting should ordinarily be determined upon a reference to the register or special master", Hunter v. Parkman, 254 Ala. 494, 499, 48 So.2d 878, 883; Stanley v. Beck, 242 Ala. 574, 7 So.2d 276, and we are impressed that in this case it would have been best to have pursued the conventional method where on reference a proper statement of account of the partners with the partnership could have been made.

But the parties seemingly were satisfied to pursue the stated procedure and made no complaint to the court to the contrary, and the judge proceeded to act on the evidence with respect to an accounting and to determine the case as an original proposition. Although, as observed, this is usually not the better practice, there was no error in adopting this method. Cases, supra; Hale v. Cox, 240 Ala. 622, 200 So. 772; Ex parte Gurganus, 251 Ala. 361, 37 So.2d 591.

■ Another matter to be noticed before treating of the merits of the case is, the trial court stated no account between the parties, struck no balance and made no findings of fact, but, as stated, entered a decree merely denying relief and dismissing the complainants' bill. This was also somewhat irregular, since he was acting in the capacity of a register or special master in the matter of the accounting of the partnership, Stanley v. Beck, supra, and should have entered his findings in connection with the decree. The record, though, is to be interpreted that he was of the opinion from the evidence that the complainants had derived their full share from the partnership after its dissolution, were entitled to no further distribution, and apparently considered it useless to belabor himself with

stating an account of the parties with the partnership. While irregular, we perceive no error to the prejudice of the complainants, though it does put this court to the necessity of elaborating somewhat to illustrate its views of the case.

■ Our review, then, will be to determine whether from the evidence the conclusion of the trial court was correct, with the usual favorable presumption attending on a hearing of the witnesses before him in open court. His conclusion had the force and effect of a verdict of a jury and unless palpably wrong or against the great preponderance of the evidence, must be sustained. Stanley v. Beck, supra; Rodgers v. Thornton, 254 Ala. 66, 46 So. 2d 809.

■ We have not been favored with a reply brief by appellee disputing the statement of fact in appellants' brief and under the rule could accept these statements as correct. City of Anniston v. Dempsey, 253 Ala. 597(1), 45 So.2d 773. But in justice to all parties, we have preferred to follow the alternate practice of going to the record to determine the facts and resolve the conflicting claims as best we can, "assuming the appellee is interested in having his judgment [decree] sustained." Tri-City Gas Co. v. Britton, 230 Ala. 283, 284(1), 160 So. 896.

■ It is conceded by all parties that the complainants, McLeods, and defendant, Willard, entered into an oral agreement of partnership for the operation of a grocery store in Mobile, Alabama, known as Holcombe Avenue Grocery, beginning January 1, 1946. Willard furnished the store building and a stock of goods of the agreed value of $2,500 and the McLeods furnished their skill as grocers and their labor and services in the operation of the business. The net profits were to be divided one-half to the McLeods (each to be entitled to a one-fourth share) and one-half to Willard (with his wife, who appears to have had some business experience, being permitted by him to share equally in his one-half). The partnership, as stated, began operation January 1, 1946, and continued until April 3, 1949, when concededly it was dissolved.

Complainants contend they were evicted from the building and forbidden to further operate the business, but defendant contends that the partnership was subject to be terminated at will and that on notice to complainants that the business was losing money and that he wished the relation terminated, the McLeods left voluntarily. The trial court seems to have agreed with the latter contention and, as there was substantial evidence to corroborate that theory, we will sustain it under the prevailing presumption. This seems not to be too important, however, since the parties conceded the partnership was dissolved as of April 3, 1949; that defendant had never made any accounting after he took over the business exclusively, although a statement had been requested by complainants. This entitled them to an accounting in equity. Ard v. Abele, 226 Ala. 611, 148 So. 318.

 The record has received our painstaking study and we have concluded with the trial court that complainants have at least received their full share of the partnership assets. A reference to the evidence would serve no good purpose to the bench and bar, but will illustrate our conclusion, so we will advert to it briefly. The evidence for complainants tends to show that the partnership on its dissolution had a considerable net value in stock and bills receivable, whereas that for the defendant places the status of the partnership business considerably in the red, with defendant having discharged a large indebtedness due by the firm, thereby indicating that complainants were indebted to him for partnership debts which he had discharged. These conflicting contentions, of course, cannot be easily reconciled, but we are constrained to believe that the testimony of Mr. Redwood, the bookkeeper who made out the income tax returns for the partnership and kept the records and who exhibited no partiality in the case, can be relied on in connection with the testimony of the parties and other witnesses to lead us to a correct conclusion. His figures for the respective years show:

1946—Beginning inventory, $2500.
Net profits, $6333.31 (divided equally between the partners, $\frac{1}{4}$ each to the McLeods, $\frac{1}{4}$ to Willard and $\frac{1}{4}$ to Mrs. Willard).

1947—Beginning inventory, $2586.15.
Net profits, $6049.13 (Same division).

1948—Beginning inventory, $2534.18.
Net profits, $5686.72 (Same division).

1949—Beginning inventory, $9540.22. This increase in the inventory over previous years was due to the removal of the business to a new and larger store building and the increase in the stock of merchandise for that purpose. This took place in the fall, about September of 1948, and naturally involved the partnership in additional indebtedness.

It appears from Mr. Redwood's records in connection with certain paid bills introduced by the defendant that, in the fall of 1948, defendant Willard, after removal of the business to the new store and the increase in the inventory, personally paid accounts of the partnership to City Sales Company, Ogburn-Davison Company, and Toomey Dry Goods Company, in the total amount of $7,125.44, which amounts were entered to the credit of Willard against the firm. Complainants contend that these large bills were paid from the daily cash sales of the business, but do not show in what manner they were paid and offer no documentary or other substantial proof to support the contention, and we cannot conceive that the business done in previous years could have increased to such immense proportions as to justify the conclusion contended for by them. We, like the trial court, are of the opinion that these paid bills were paid by Willard and properly credited to his account individually. Subtracting the total of these paid accounts from the 1949 beginning inventory of $9,-540.22 would result in a net beginning inventory for that year of $2,314.78, or about the same as the beginning inventories of previous years. Redwood's records show that the annual net profit of the business averaged about $6,000, which was each

year divided between the partners in accordance with their agreement. The only thing remaining, therefore, for accounting is the first three months of 1949 until the dissolution of the firm. Using the previous years as an index, it is reasonable to deduce that the first three months of 1949 would reflect about the same average net gain or $1,500, although the evidence on this point is not too clear and merely speculative. Redwood's records also show that for that period the complainants received from the partnership business $200 each in February and $200 each in March, making a total of $800 in profits distributed to them, thereby indicating a total profit of the business of about $1,600 for the three-month period —about the same as in previous years. There were bills receivable, but not shown entirely collectible, on the dissolution of the firm of about $1,500. In July the complainants received $477.91, which Redwood says was in settlement, and from aught appearing if not in settlement this was all of the bills receivable collectible. At least the complainants have not proven otherwise and the court evidently was not otherwise convinced. The only remaining asset for consideration then is the net inventory, which was about the same amount as the $2,500 first furnished by defendant, which stood to his credit as a debt against the partnership, thus indicating the complainants had received their full distribution of partnership assets. These figures are merely approximations, since they are all we have to go by. But we think they serve as proper predicate for the conclusion reached.

The statement of defendant Willard leads somewhat to the same result—except more so. Following is a recapitulation of his figures:

| | |
|---|---|
| Paid City Sales Company | $4026.72 |
| Paid Ogburn-Davison Company | 2456.50 |
| Paid Toomey Dry Goods Company | 632.22 |
| Total paid by E. E. Willard | 7125.44 |
| Initial merchandise E. E. Willard (beginning inventory) | 2500.00 |
| | 9625.44 |

Merchandise April 1949 (inventory taken by Willard)

| | |
|---|---|
| | 7081.16 |
| | 9625.44 |
| | 7081.16 |
| | 2544.28 |

Appellants contend that for various reasons indicated by the record defendant's testimony was not credible; that no inventory was taken after dissolution of the partnership and that, therefore, his testimony that there was should be disregarded. On this we will only say that the testimony of both partners McLeods and Willard on certain matters do not impress us as altogether accurate, so we must of necessity leave such a decision to the trial judge, who saw and heard the witnesses and was better advantaged to appraise the accuracy of all the testimony than we.

We are drawn to the conclusion that the decree of the court below is not against the great weight of the evidence and must, therefore, sustain it. Rodgers v. Thornton, supra; Stanley v. Beck, supra.

Appellants argue for error to reverse in the admission in evidence of certain exhibits proffered by defendant, viz.: the inventory claimed to have been taken in April after dissolution of the firm, and the accounts claimed to have been paid by Willard of City Sales Company, Ogburn-Davison Company, and Toomey Dry Goods Company. The theory seems to be that since complainants introduced evidence affording an inference that no inventory was taken, and that because Willard testified the accounts were paid in the fall of 1949 and the dates had been changed to show the same, although they were in fact paid in 1948 while the firm was operating, these documents were inadmissible. The position is untenable. Such impeaching evidence merely went to the credibility of Willard's testimony with respect to the documents, and not to their admissibility.

We find no error to reverse.

Affirmed.

LIVINGSTON, C. J., and FOSTER and GOODWYN, JJ., concur.