82 So.2d 435

**DEPARTMENT OF INDUSTRIAL RELATIONS**

v.

**Leon SAVAGE.**

**6 Div. 913.**

Court of Appeals of Alabama.

Aug. 30, 1955.

J. Eugene Foster and Richard S. Brooks, Montgomery, for appellant.

Pritchard, McCall & Jones, Birmingham, for intervener.

278

E. L. All, Jas. C. Blair, White, Bradley, Arant, All & Rose, Birmingham, amici curiae.

Reuben L. Newton, Jasper, for appellee.

PRICE, Judge.

This case involves a claim by appellee, Leon Savage, for unemployment compensation. Appellee's claim was denied in the administrative processes of the applicable law. On appeal to the Circuit Court of Walker County the cause was tried by the court without the intervention of a jury, resulting in a judgment awarding compensation benefits to appellee.

The cause was submitted here on appellant's brief, brief by appellee's employer as intervenor and brief amicus curiae in support of the contention that appellee is disqualified and ineligible to receive unemployment compensation. There is no formal joinder of error on the record (Supreme Court Rule 1) nor is there a brief filed on behalf of the appellee. We will, nevertheless, consider the cause on its merits, the assumption being that the appellee is interested in having his judgment sustained. Tri-City Gas Co. v. Britton, 230 Ala. 283, 160 So. 896; McLeod v. Willard, 257 Ala. 672, 60 So.2d 692.

The sole issue here is whether or not appellee's unemployment was directly due to a labor dispute. Section 214, subd. A, Tit. 26, Code 1940, as amended, provides:

"An individual shall be disqualified for total or partial unemployment: A. For any week in which his total or partial unemployment is directly due to a labor dispute still in active progress in the establishment in which he is or was last employed; for the

purposes of this section only, the term 'labor dispute' includes any controversy concerning terms, tenure or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing, or seeking to arrange terms, or conditions of employment, regardless of whether the disputants stand in the proximate relation of employer and employee. This definition shall not relate to a dispute between an individual worker and his employer."

The evidence tends to show that appellee was a member of Local 514, United Brick and Clay Workers of America. He was employed in Walker County, Alabama, by the National Fireproofing Corporation, a company engaged in the manufacture of glazed ceramic tile and glazed and unglazed face brick. Appellee recognized the union as his exclusive agent for the purpose of collective bargaining with respect to wages, hours and other conditions of employment. The company operated during the year 1951 under a labor contract with appellee's union. This contract expired December 31, 1951.

In early December, 1951, negotiations were begun between representatives of the company and the union to reach agreement on a contract for 1952. These negotiations were directed particularly to demands by the union for wage increase and other conditions of employment. When no agreement was reached prior to December 31, 1951, the parties, by mutual consent, continued to operate during January and part of February, 1952, under the terms of the 1951 contract. Negotiations were continued during this time to arrive at a new contract.

On January 25, 1952, William L. Griffith, Vice-President of the United Brick and Clay Workers of America, notified the company by letter that, "if no agreement has been reached by March 1, 1952, the plants will cease operation until an agreement is reached."

On February 21, 1952, company officials were advised by Clint Short, President of Local 514, that unless a contract was signed by March 1, 1952, the men would cease work in the plant. They were further advised that in the event of a shutdown neither the

kiln firemen nor the foremen would be allowed to stay on "to burn off the kilns that hadn't completed the burning cycle." In previous labor disputes the union had allowed its workers to remain on the job to "burn off" the kilns containing tile and brick which was in the process of cooling.

During the month of February, 1952, the company operated 16 of its 18 kilns and the major production at that time was glazed ceramic tile. The length of time necessary to complete the process of manufacturing glazed ceramic tile is approximately two and one-half weeks.

Harry Papier, the plant manager, whose qualifications as an expert in ceramic engineering were admitted, testified that if the fire in the kilns was extinguished before the process of heating the tile was completed, the company would suffer excessive losses from "cracks in the ware, excessive pinholing and warped ware." This witness estimated the losses would be between fifty and ninety per cent of the material in the kilns at the time they were shut down.

On February 23, 1952, the following notice was posted on the company bulletin board:

"Your committee met with us on Thursday, February 21, 1952, and notified us that in the event that a strike was called for March 1, 1952, that all employees, including kiln firemen, would be pulled from their jobs.

"We are arranging to have all our kilns burned off by that time so that material will not be damaged unnecessarily in the event a strike is called. We will therefore be forced to shutdown most departments before March 1, 1952, in working toward this end.

"National Fireproofing Corp.
"Harry Papier
"Plant Manager."

Mr. Papier testified that the company had no intention of discontinuing any of its operation until notified by the union that all employees would cease work if no agreement had been reached by March 1, 1952; that on February 21, 1952, the normal num-

ber of employees were on the job; that there had been no curtailment of orders and that the company could have sold anything it "could produce in full production."

Beginning February 23, 1952, the company laid off workers in the various departments as soon as the particular jobs on which they were employed were closed down.

Appellee, whose duties were to transfer partially dried brick from the dryer to the spray department, and then back to the kilns to be baked, was laid off work on February 25th. On February 29, 1952, all manufacturing activities of the company ceased.

On Saturday, March 1, 1952, Papier notified Clint Short, President of Local 514, that the plant would be open for work the following Monday and asked that all men not on strike report for work on that date. None of the employees returned to work on March 1st.

On April 17, 1952, the controversy as to the new contract was settled and the company resumed normal operations, with all of its employees, including appellee, returning to their jobs.

■ To establish a "labor dispute" precluding recovery of unemployment benefits, it is not necessary to show that a strike or lock-out resulted. 81 C.J.S., Social Security and Public Welfare, § 176, p. 264. In this connection the Supreme Court, in Ex parte Pesnell, 240 Ala. 457, 199 So. 726, made the following statement:

"Suffice it to say we think it clear enough these findings (of the Court of Appeals) disclose a labor dispute unless, as seems to be argued by counsel for petitioner, there must also be made to appear a 'strike or lockout' resulted or some show of force or intensity of feeling to bring the case within the meaning of our statute. * * *

"Our statute merely uses the words 'labor dispute' without further definition and with no indication whatever a strike or lockout must result. A 'dispute' is a verbal controversy. 'To contend in argument;

discuss; debate; often, to argue irritably; wrangle'. Webster's New International Dictionary, Second Edition. There appears, therefore, no foundation for the argument that the words 'labor dispute' as used in the statute are to be interpreted as meaning a verbal controversy resulting in 'a strike or lockout', to use the language of petitioner's brief."

■ The evidence pertinent to the question of whether appellee's unemployment was "directly due to a labor dispute", as that term is used in subdivision A of Section 214, Tit. 26, is without any material conflict. The testimony of appellee and three or four of his fellow employees to the effect that no official of the company told them they were being laid off because of labor trouble did not constitute material conflict in the evidence pertinent to the question of whether appellee's unemployment was "directly due to a labor dispute", as that term is used in the statute. Since the evidence was without material conflict, there is no presumption in favor of the trial court's judgment. Department of Industrial Relations v. Tomlinson, 251 Ala. 144, 36 So.2d 496; Department of Industrial Relations v. Haynes, 259 Ala. 238, 67 So.2d 62.

■ It is our opinion that appellee's unemployment was due to a stoppage of work which existed because of a labor dispute, as that term is used in Tit. 26, Sec. 214, subd. A, Code.

There is no evidence of an intervening independent agency, as was the case in Gulf Atlantic Warehouse Co. v. Bennett, 36 Ala. App. 33, 51 So.2d 544.

Appellant had the right, in our opinion, to rely on the statement of appellee's agent to the effect that the employees would cease work on March 1, 1952, if no agreement had been reached at that time, and to take appropriate action to protect its property from damage during the pendency of the strike. Ablondi v. Board of Review, 8 N.J.Super. 71, 73 A.2d 262; Climax Fire Brick Co. v. Unemployment Bd. of Review, 166 Pa. Super. 481, 72 A.2d 300; Bako v. Unem-

ployment Comp. Bd. of Review, 171 Pa. Super. 222, 90 A.2d 309.

The judgment of the trial court is reversed and remanded.

Reversed and remanded.