109 So.2d 135

**DEPARTMENT OF INDUSTRIAL RELATIONS et al.**

**v.**

**Homer B. WALKER and Samuel Danzy.**

**6 Div. 42.**

Supreme Court of Alabama.

Feb. 12, 1959.

Cooper, Mitch & Black, Birmingham, for petitioners.

508

J. Eugene Foster and Richard S. Brooks, Montgomery, for Dept. of Ind. Relations.

E. L. All, Jas. C. Blair and White, Bradley, Arant, All & Rose, Birmingham, for Stockham Valve & Fittings, opposed.

GOODWYN, Justice.

We granted certiorari to review the decision of the Court of Appeals in Department of Industrial Relations v. Walker, 109 So.2d 131. The case involves the claims of Walker and Danzy, employees of Stockham, for unemployment compensation.

The Court of Appeals, after summarizing the tendencies of the evidence, held as follows:

"We are of the opinion that the evidence clearly establishes the existence of a labor dispute concerning terms, tenure or conditions of employment at the plant of Stockham Valves and Fittings from March 3, 1953, and that appellees' unemployment was directly due to such labor dispute, as the term is used in the statute, supra.

"Under the evidence, it is our opinion, Stockham was authorized, in anticipation of a strike, to take proper measures for the protection of its property from damage during the pendency of the strike. * * *"

The question presented is whether the Court of Appeals' holding, based on its findings from the evidence, is contrary to the provisions of § 214, Subdiv. A, Tit. 26, Code 1940, as amended by Act No. 565, appvd. August 31, 1951, Acts 1951, p. 990. (Section 214 was also amended by Act No. 360, appvd. Sept. 7, 1955, Acts 1955, p. 875, but no change was made affecting Subdiv. A.) Section 214, Subdiv. A, as amended, supra, provides as follows:

"§ 214. Disqualification for benefits.—An individual shall be disqualified for total or partial unemployment:

"A. For any week in which his total or partial unemployment is directly due to a labor dispute still in active progress in the establishment in which he is or was last employed; for the purposes of this section only, the term 'labor dispute' includes any controversy concerning terms, tenure or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment, regardless of whether the disputants stand in the proximate relation of employer and employee. This definition shall not relate to a dispute between an individual worker and his employer."

Petitioners take the position that their unemployment "was ordered by their em-

ployer directly because of the employer's 'apprehension' of possible untoward results that might have occurred if a strike or failure to extend the then existing contract took place subsequent to petitioners' lay-off."

It seems to us, from the evidence as found by the Court of Appeals, that the closing down of the Company's plant was the direct result of the labor dispute then in progress between petitioners' union and the Company. To hold that the unemployment, under the facts as found by the Court of Appeals, was "directly due" to the closing of the plant and not "directly due" to the labor dispute would be contrary to the clear purpose of the statute—to deny compensation when the unemployment is the direct result of a labor dispute. We find no error in the Court of Appeals' holding that the direct cause of the unemployment was the labor dispute. Nor do we find error in the holding that "under the evidence," the employer "was authorized, in anticipation of a strike, to take proper measures for the protection of its property from damage during the pendency of the strike." Department of Industrial Relations v. Savage, 38 Ala.App. 277, 82 So. 2d 435. Cf. Brechu v. Rapid Transit Company, 20 Conn.Sup. 210, 131 A.2d 211; Bako v. Unemployment Compensation Board of Review, 171 Pa.Super. 222, 90 A.2d 309; Climax Fire Brick Co. v. Unemployment Compensation Board of Review, 166 Pa.Super. 481, 72 A.2d 300; Saunders v. Maryland Unemployment Compensation Board, 188 Md. 677, 53 A.2d 579; Chrysler Corporation v. Review Board, 120 Ind.App. 425, 92 N.E.2d 565; American Steel Foundries v. Gordon, 404 Ill. 174, 88 N.E.2d 465; Carnegie-Illinois Steel Corporation v. Review Board, etc., 117 Ind.App. 379, 72 N.E.2d 662.

It should be noted that the case of Usher v. Department of Industrial Relations, 261 Ala. 509, 75 So.2d 165, has no application here. In that case the claimant was in no way involved in the labor dispute causing his unemployment. In the instant case the claimants were members of the union engaged in a labor dispute with their employer.

Petitioners insist that "the opinion of the Court of Appeals in this case and in the case of Department of Industrial Relations v. Savage, 38 Ala.App. 277, 82 So.2d 435 [supra], are squarely in conflict with the case of Gulf Atlantic Warehouse Company v. Bennett, 36 Ala.App. 33, 51 So.2d 544, * * *." In Savage [82 So.2d 438] the Court of Appeals noted that there was "no evidence of an intervening independent agency," as in Bennett. In the Bennett case it was held that, where a public warehouse company, in apprehension that its employees might walk out or create a work stoppage at expiration of their collective bargaining contract, notified its customers to that effect, and customers ceased shipments to the warehouse, the resulting unemployment was directly due to the misapprehension of the customers, as an intervening agency independent of the labor dispute, and, therefore, the unemployment was not directly due to a labor dispute within the disqualification provisions of § 214, Subdiv. A, supra. Clearly, that case is distinguishable from the one now before us and also the Savage case.

Petitioners complain that "the Court of Appeals has reviewed the evidence, which was in conflict as to the circumstances and cause of petitioners' unemployment, and has substituted its appraisal of the facts for that of the learned Circuit Judge." That is an argument which could have been appropriately addressed to the Court of Appeals during its consideration of the case. It is not appropriate here.

The petitioners also, in their petition for certiorari and in their briefs, make reference to and discuss evidence which is not included in the Court of Appeals' opinion. On certiorari to that Court we do not go to the record and consider all the evidence anew and determine, as a reviewable proposition, whether the factual findings and conclusions are suffi-

**510**

ciently supported by the evidence or are against the great weight and preponderance of the evidence. Nor will we examine the record and determine whether the Court of Appeals failed to give proper consideration to the rule of review that a trial court's findings from evidence taken orally before it is "to be given the effect of a jury verdict and is not to be disturbed when there is evidence to support it." It must be remembered that the Court of Appeals is a court of final appellate jurisdiction in this state and its decisions are reviewable by us only by certiorari. Our review is confined to the opinion, although at times we examine the record for a better understanding of the court's holding.

Affirmed.

All the Justices concur.