PER CURIAM.
This is an unemployment compensation case.
These nine unemployment compensation “test cases” were consolidated on appeal from a judgment of the Mobile County Circuit Court denying unemployment compensation benefits to the named parties. The judgment affects the eligibility of several hundred employees of appellee Alabama Dry Dock & Shipbuilding Company.
Appellants are production and maintenance employees of Alabama Dry Dock & Shipbuilding Company (ADDSCO) who were working at the employer’s shipyard in the spring of 1979. The production and maintenance employees have at all times been represented by the Industrial Union of Marine & Shipbuilding Workers of America, Local Number 18, AFL-CIO (the Union). At all relevant times the Union and ADDS-CO were parties to a three year collective, bargaining agreement covering the terms and conditions of employment at ADDSCO. The contract was due to expire on May 5, 1979. The terms of the agreement required that either party to the agreement give at least sixty days’ notice of its intention to modify or terminate the contract. Negotiations were to begin twenty days thereafter.
Pursuant to the provisions of this agreement, the Union sent a letter of notice to ADDSCO on March 2, 1979 of its intention to modify the contract and renegotiate the terms and conditions of the agreement. Between March 22, 1979 and May 2, 1979 the Union and ADDSCO had approximately seventeen negotiating meetings. No agreement concerning wages appeared to be possible, given the Union’s rejection of ADDS-CO’s intent to abide by the President’s anti-inflation wage and price guidelines.
By late March or early April ADDSCO, in anticipation of a strike, began to refuse new work coming into the yard and to reject work for which it had previously contracted. Production on the ships currently in the yard was stepped up to insure that the work was completed before the contract expiration date. The evidence shows that in the last thirty years there had been eleven renewals of the collective bargaining contracts between ADDSCO and its employees. Seven of these renewals resulted in strikes; some negotiation was required each time the agreement expired. As for ADDSCO’s rejection of incoming work, it appears that contracts for ship repair or other work frequently contain clauses providing for the shipyard to pay “demurrage” charges for each day the ship is kept in the yard past the agreed-upon completion date. These charges sometimes run into thousands of dollars daily. Further, if a ship is in the yard at the time a strike is called, the ship becomes a “hot ship,” meaning that no other unionized shipyard will undertake to complete the work. Should this event occur, the shipyard is in danger of losing that customer’s business.
As a result of the reduction in work coming into the yard, ADDSCO began to lay off its employees. By May 4,1979 the total work force had been reduced by more than half.
On May 2, 1979 ADDSCO submitted its final offer to the Union. The last meeting between the parties took place on May 4; no agreement was reached. On that same day the last ship left the yard. On the morning of May 5 the Union voted to reject ADDSCO’s offer, and picket lines went up thereafter. ADDSCO issued additional temporary layoff notices on May 7, after the strike had begun. The strike lasted eighty-nine days.
Appellants Ross, Webster and Mayo received temporary layoff notices on April 20, May 3, and May 4, respectively. The remaining parties received notices on May 7, after the strike had begun. The parties, *74 along with the other nearly 1,100 temporarily unemployed workers of ADDSCO, filed claims for unemployment compensation benefits with the Department of Industrial Relations. Appellants Flowers, Demetropo-lis, Jordan and Lynch were denied unemployment compensation benefits. On appeal within the agency both the Appeals Referee and the Board of Appeals affirmed the denials. Appellants Ross, Mayo, Leslie, Chancellor and Webster were granted unemployment compensation benefits. ADDSCO appealed the decision, which was affirmed by both the Appeals Referee and the Board of Appeals.
Appellants Flowers, Jordan, Lynch and Demetropolis filed suit for review in the Mobile County Circuit Court. Appellee ADDSCO filed suit for review in the same court on the claims of the remaining appellants. The circuit court entered a judgment on March 23,1981, denying unemployment benefits to all parties. The court held that “the unemployment involved in these cases was directly due to a labor dispute in active progress,” disqualifying all claimants from receiving compensation. This consolidated appeal followed.
Section 25 — 4r-78(l), Code 1975, provides that an employee is disqualified from receiving unemployment compensation benefits when his unemployment is “directly due to a labor dispute still in active progress in the establishment in which he is or was last employed.” For a claimant to be disqualified under § 25-4-78(1), “five separate and distinct conditions must coincide, namely (1) his unemployment must be directly due, (2) to a labor dispute, (3) in active progress, (4) in the establishment, (5) in which he was last employed." Davis v. Pickett, 412 So.2d 1225 (Ala.Civ.App.1981), petition for cert. filed, S.C. 80-879 (Ala. Sept. 2, 1981).
The only issues we are called upon to decide are (1) whether there existed a “labor dispute in active progress,” and (2) whether appellants’ unemployment was “directly due” to a labor dispute in active progress.
Considering first the question of whether a “labor dispute in active progress” existed at the time appellants became unemployed, we note that § 25-4-78(1) defines “labor dispute” as including:
[A]ny controversy concerning terms, tenure or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing or seeking to arrange terms or conditions of employment, regardless of whether the disputants stand in the proximate relation of employer and employee. This definition shall not relate to a dispute between an individual worker and his employer.
Appellants contend that a labor dispute does not exist until negotiations have ceased to be in a “fluid state,” citing Indiana cases as support. However, it is long established Alabama precedent that to establish the existence of a “labor dispute” within the meaning of the statute, it is not necessary to show that a strike or lockout has resulted. Ex parte Pesnell, 240 Ala. 457, 199 So. 726 (1940). Moreover, a labor dispute may exist from the date negotiations begin. Department of Industrial Relations v. Walker, 40 Ala.App. 1, 109 So.2d 131 (1956), aff’d, 268 Ala. 507, 109 So.2d 135 (1959).
At the time of the first layoff on April 20, the facts of this case justify the trial court’s conclusion that there was a labor dispute in active progress. The union and ADDSCO had met at the bargaining table several times without success. In order to bid on government contracts, ADDS-CO was bound by the federal wage and price guidelines. The union was unwilling to accept wage increases within the limits of these guidelines. When ADDSCO began laying off workers in late April, it appeared likely that the union would strike upon expiration of the agreement. In fact the strike did occur on May 7.
The next question is whether appellants’ unemployment was “directly due” to a labor dispute which was in progress at the time appellants received their temporary layoff notices. Appellants contend that the unemployment was due, not to the labor dispute, but to a lack of work caused by customers’ *75 reluctance to do business with ADDSCO at that time. They cite as authority the line of cases exemplified by Gulf Atlantic Warehouse Co. v. Bennett, 36 Ala.App. 33, 51 So.2d 544 (1951), and Department of Industrial Relations v. Headon, 42 Ala.App. 132, 155 So.2d 123 (1962), cert. denied, 275 Ala. 694, 155 So.2d 128 (1963). We do not consider the cited cases as apt authority for the case now before us.
In the Gulf Atlantic case the owner of a cotton warehouse gave notice to its customers of a pending labor strike, which would tie up the cotton in the warehouse until the strike was settled. The customers themselves ordered the cotton shipped out of the warehouse before the strike began. A reduction in the workload followed, and the warehouse began to lay off its employees. The labor dispute was settled before a strike was called. The court held that the apprehension on the part of the customers that a strike would occur was an intervening agency causing a reduction in work and unemployment; hence, the unemployment was not “directly due” to a labor dispute as required by § 25-4r-78(l).
The Headon case involved a labor dispute between a shipyard owner and its employees. News of a pending strike was disseminated by the newspapers, and shipowners began to remove ships from the yard. The employer laid off its employees as the workload diminished. The court held that the intervening force of customer apprehension caused a reduction in the workload and the resulting unemployment; the employees were not disqualified under § 25-4-78(1).
Appellee contends that appellants’ unemployment was indeed “directly due” to a labor dispute in active progress, and cites in support of his contention the line of authority beginning with Department of Industrial Relations v. Savage, 38 Ala.App. 277, 82 So.2d 435 (1955), and Department of Industrial Relations v. Walker, supra. The Savage case involved a labor dispute in a ceramic tile manufacturing plant. Large kilns were used to heat the tile; the entire heating process lasted approximately two and one-half weeks. If the kilns were not allowed to complete the heating process, substantial damage would be sustained. Prior to a labor strike, the manufacturer began to shut down the large kilns as soon as the cycle was completed, and began to lay off its employees as current jobs were finished. The unemployment in that case was found to be due to a work stoppage caused by a labor dispute; there was no evidence of an intervening agency, as in the Gulf Atlantic case. The employer had, the court stated, the right to take action to protect its property from harm during the pendency of the strike. The Walker case, involving a manufacturer of castings and fittings, is in accordance with Savage.
After reviewing the evidence presented to the trial court, we find that the present ease is more nearly in line with the Savage and Walker cases. Testimony indicated that ADDSCO took affirmative steps to turn away new business and reject work for which it had already contracted. Clearly, the rejection of work was a result of ADDSCO’s concern about the pending labor strike. ADDSCO acted to protect its business from the expense of unnecessary demurrage charges, and from the danger of loss of business from poor customer relations in the event a customer’s ship was caught in the midst of the strike. An employer has the right to take steps to protect his business from adverse consequences, including monetary loss, during the pendency of a labor dispute. There is also no evidence of an intervening agency, as in the Gulf Atlantic case. Testimony concerning customer apprehension is tenuous at best.
Furthermore, it does not appear ADDSCO acted too hastily in turning away business. ADDSCO participated fully in the negotiation process before determining that the most prudent business practice would be to ensure that no ships would be caught in the yard during the strike. Consequently, we find no error in the trial court’s findings that the layoffs were directly due to a labor dispute in active progress. Given the harsh economic realities of the shipbuilding industry during a strike, ADDSCO appeared to have little *76 choice but to turn away business and begin to lay off its employees.
The ore tenus rule applies in unemployment compensation cases. When the trial court has heard evidence orally, the court’s findings will not be overturned unless clearly contrary to the great weight of the evidence. Steele v. Carter, 390 So.2d 299 (Ala.Civ.App.1980). The judgment below is amply supported by the evidence and will not be overturned.
We find that appellants’ unemployment was “directly due to a labor dispute in active progress” under § 25 — 4-78(1), Code 1975, thus disqualifying all appellants from receiving unemployment compensation benefits.
This court would be remiss in not commenting that both appellants and appellees have favored us with excellent briefs. Additionally, both appellants and appellees made excellent presentations during oral argument.
The judgment below is affirmed.
AFFIRMED.
All the Judges concur.