After Remand from the Supreme Court

MONROE, Judge.
This court’s prior judgment has been reversed and the cause remanded by the Alabama Supreme Court. Ex parte General Motors Corp., 800 So.2d 159 (Ala.2000). In reversing, the Supreme Court held that the Jefferson Circuit Court’s order transferring this case to the Tuscaloosa Circuit Court was proper. Therefore, the Tuscaloosa Circuit Court had jurisdiction to hear General Motors Corporation’s appeal of a decision of the Alabama Department of Industrial Relations Board of Appeals determining that certain employees of two GM plants in Alabama were entitled to unemployment-compensation benefits.
In compliance with the Supreme Court’s opinion, we affirm the order of the Jefferson Circuit Court transferring the case and reinstate the judgment of the Tuscaloosa Circuit Court reversing the Board of Appeals’ order awarding unemployment-compensation benefits. We now address the substantive issue raised on the appeal of that judgment.
Jerry W. Hilley and certain other employees of two General Motors plants in Alabama — the Delphi-Harrison radiator plant in Tuscaloosa and the Delphi-Saginaw steering plant in Athens' — were laid off because of decreased productivity at the Delphi brake system plant in Dayton, Ohio (“Delphi-Dayton”). The Delphi-Dayton plant’s productivity decreased because of a strike by members of the International Union, United Automobile, Aerospace and Agricultural Workers (“UAW”) Local 696 in Dayton. Hilley and other claimants applied to the Alabama Department of Industrial Relations (“DIR”) for unemployment-compensation benefits; DIR denied their claims. A large number of claimants appealed from DIR’s decision. Rather than conducting more than a thousand hearings, DIR, the claimants, and GM agreed to conduct a single hearing or “test case.”[1] Counsel for GM and counsel for the claimants selected Hilley to act as the test-case claimant representing all similarly situated claimants. The parties also agreed to bypass the appeals referee stage and proceed to the DIR State Board of Appeals (“Board”). After holding a hearing, the Board issued an opinion on December 17, 1996, determining that Hilley and the other claimants were entitled to unemployment-compensation benefits. On January 23, 1997, GM appealed this decision to the Circuit Court of Jefferson *169 County. The Jefferson Circuit Court transferred the case to the Circuit Court of Tuscaloosa County. On June 15, 1998, the Tuscaloosa Circuit Court entered an order reversing the Board’s award of benefits. Hilley appealed to this court.
Hilley contends that the trial court erred in reversing the Board’s order awarding unemployment-compensation benefits to him and the other claimants. Specifically, Hilley argues, the trial court misapplied § 25-4-78, Ala.Code 1975, which provides that people who meet certain criteria are disqualified from receiving unemployment-compensation benefits.
Section 25-4-78 provides in pertinent part:
“An individual shall be disqualified for total or partial unemployment:
“(1) Labor Dispute in Place of Employment.- — -For any week in which his total or partial unemployment is directly due to a labor dispute still in active progress in the establishment in which he is or was last employed. For purposes of this section only, the term ‘labor dispute’ includes any controversy concerning terms, tenure or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing or seeking to arrange terms or conditions of employment, regardless mf whether the disputants stand in the proximate relation of employer and employee. This definition shall not relate to a dispute between an individual worker and his employer.”
“For a claimant to be disqualified under § 25-4-78(1), ‘five separate and distinct conditions must coincide, namely (1) his unemployment must be directly due, (2) to a labor dispute, (3) in active progress, (4) in the establishment, (5) in which he was last employed.’ ” Flowers v. Director, Dep’t of Indus. Relations, 435 So.2d 72, 74 (Ala.Civ.App.1981), rev’d in part on other grounds, Ex parte Flowers, 435 So.2d 76 (Ala.1983), quoting Davis v. Pickett, 412 So.2d 1225 (Ala.Civ.App.1981). The unemployment-compensation statute was created to provide a remedial measure for the benefit of the unemployed worker. Polk v. State Dep’t of Industrial Relations, 413 So.2d 1164 (Ala.Civ.App.1982). Thus, the statute is to be liberally construed in favor of the claimant. Id. The employer has the burden of proving any disqualification under section § 25-4-78(1). Ex parte Flowers, 435 So.2d 76 (Ala.1983).
The Tuscaloosa Circuit Court determined that Hilley’s unemployment was directly due to a labor dispute in the establishment in which he was employed. Thus, the court ruled that he was disqualified from receiving unemployment-compensation benefits. The parties disagree as to the proper interpretation of the term “establishment.”
The record shows the following pertinent facts concerning GM’s operations. GM is made up of five business sectors, one of which is Delphi Automotive Systems (“Delphi”). Delphi manufactures automotive components for GM assembly plants in North America. The two Alabama GM plants involved in this case are Delphi plants.. The Delphi-Harrison plant in Tuscaloosa produces thermal systems (radiators) and the Delphi-Saginaw plant in Athens produces steering systems. The Delphi-Dayton plant, at which the strike occurred, produces braking systems. Delphi plants utilize a “just-in-time” inventory system; under this system, components are manufactured in accordance with the production schedules of the assembly plants, with each Delphi plant producing a component and immediately shipping it in a special container and special tray to an assembly plant so that the component ar *170 rives at the assembly plant “just in time” to be installed in an unfinished automobile. The empty containers and trays are then returned to the Delphi plants for reuse.
The UAW Local 696 strike at the Delphi-Dayton plant, which began on March 5, 1996, caused that plant to stop production of GM parts.[2] This in turn caused assembly plants to run out of braking systems to install in automobiles, and the assembly lines stopped. Because the assembly lines stopped, and given the “just in time” inventory system, the assembly plants had no demand for other components. Thus, the Delphi plants manufacturing the components were forced to stop production; their stopping production caused thousands of employees to be laid off from Delphi plants across the country. Workers at the Tuscaloosa and Athens plants were laid off in stages after the strike began and were called back in stages after the strike ended on March 22, 1996.
The record makes it clear that only the members of UAW Local 696 in Dayton were on strike. No workers in the Alabama plants were on strike, and no Alabama workers had an opportunity to vote on the strike. In fact, the Alabama workers were ready, willing, and able to work at all times relevant to this case.
As noted above, a claimant is not entitled to unemployment-compensation benefits if his unemployment is directly due to a labor dispute in the establishment in which he was last employed. The Alabama statute does not define the term “establishment,” so we must look to relevant caselaw in an attempt to define it. Our review begins with Tennessee, Coal, Iron & Railroad Co. v. Martin, 251 Ala. 153, 36 So.2d 547 (1948), in which the Supreme Court affirmed the Court of Appeals’ decision holding that the claimants should not be disqualified from receiving unemployment compensation. In Martin, the Supreme Court reprinted the entire majority opinion of the Court of Appeals and part of Presiding Judge Bricken’s dissent. Our citations are to the Supreme Court’s opinion and are noted as such. The Court of Appeals’ opinion appears at, 33 Ala.App. 502, 36 So.2d 535 (1948).
In Martin the claimants, coal miners, were out of work because of a strike by ore miners and furnace and mill workers.[3] Although all three groups worked for Tennessee, Coal, Iron, & Railroad Company, each group had its own separate and distinct labor union. The coal miners were affiliated with the United Mine Workers of America, the ore miners belonged to the International Union of Mine, Mill, and Smelter Workers, and the furnace and mill workers’ union was the United Steel Workers of America. See Martin, 251 Ala. at 159, 36 So.2d at 553 (quoting Judge Bricken’s dissent). The Court of Appeals, in interpreting the word “establishment,” reviewed Spielmann v. Industrial Commission, 236 Wis. 240, 295 N.W. 1 (1940), and Chrysler Corp. v. Smith, 297 Mich. 438, 298 N.W. 87 (1941), overruled in part by Park v. Appeal Board of Michigan Employment Security Commission, 355 Mich. 103, 94 N.W.2d 407 (1959). The Spielmann court determined that because of “functional integrality, general unity, and physical proximity ... two plants ... constituted one establishment.” Martin, *171 251 Ala. at 156, 36 So.2d at 550 (quoting the opinion of the Alabama Court of Appeals). In Chrysler Corp., the Michigan court used tests of functional integrality and coordination in interpreting the word “establishment.” The Alabama Court of Appeals determined that “the tests of unity of management and integrality of function, while furnishing aid in determining the true meaning of the word ‘establishment’ as it appears in our Act, are essentially only rule of thumb tests.” Martin, 251 Ala. at 157, 36 So.2d at 551, (quoting the opinion of the Court of Appeals). The Supreme Court approved of the Court of Appeals’ “observations” on the Spielmann and Chrysler Corp. cases, but added the additional observation that “no stress appears to have been made by the courts in those cases upon the matter of liberal construction of the statute and strict construction of the disqualification provision.” Martin, 251 Ala. at 162, 36 So.2d at 555. The Court of Appeals, using the common understanding and usage of the words in Alabama’s Unemployment Compensation Act, ultimately held that the coal mines in which the claimants worked were establishments separate from the establishment or establishments in which a labor dispute was in progress. In affirming this decision, the Supreme Court stated that the best definition of the word “establishment” was “a place of business” as defined by Webster’s New International Unabridged Dictionary (2d ed.), Martin, 251 Ala. at 162, 36 So.2d at 554.
The next case in which the Supreme Court examined the term “establishment” was United States Steel Corp. v. Wood, 269 Ala. 5, 114 So.2d 551 (1959), in which the Supreme Court reversed the Court of Appeals’ decision reported at 40 Ala.App. 431, 114 So.2d 533 (1958). In Wood, the claimant worked as an iron ore miner for the Tennessee Coal and Iron Division of United States Steel Corporation (“U.S. Steel”). The location where the claimant worked included iron ore mines, an ore conditioning plant, and furnaces, as well as a railroad connecting them. The conditioning plant workers and the transportation workers went on strike, and, as a result, the miners were laid off. The iron ore miners and the conditioning plant workers were members of the United Steel Workers of America, C.I.O. Both groups were covered by the United Steel Workers of America national collective-bargaining agreement, but they belonged to separate local unions. However, according to the testimony of the assistant general superintendent of the ore mines and quarries of U.S. Steel, the five local unions had a joint collective-bargaining agreement. See Wood, 40 Ala.App. at 448, 114 So.2d at 539, 548 (chart). The claimant did not participate in the strike and did not have any input in the decision of the conditioning plant workers to go on strike. The Court of Appeals, citing Usher v. Department of Indus. Relations, 261 Ala. 509, 75 So.2d 165 (1954), determined that the claimant could not be disqualified from receiving unemployment-compensation benefits, because he was not a member of the local union on strike and could not have prevented the strike. Wood, 40 Ala.App. at 434, 438-39, 114 So.2d at 536, 540-41. The court also stated that it was difficult to determine whether the strike caused the unemployment or whether the employer’s actions in laying off workers caused the unemployment. Thus, the court determined that it need not address the question whether the strike occurred at the “establishment” where the claimant was last employed.
However, the Supreme Court reversed the judgment of the Court of Appeals, stating that the Court of Appeals had extended the holding of Usher, supra, beyond its intended meaning. In Usher, the *172 claimant was a member of the Brotherhood of Local Firemen and Enginemen, and the striking workers were members of the United Steel Workers Union, C.I.O. Thus, the claimant and the striking workers were members of different national unions that had no joint affiliation. Yet, in Wood, the claimant was a member of the same national union that was governed by the same national agreement, and the strike was terminated by instructions of the chief executive officer of that national union. The Supreme Court determined that these facts distinguished Wood from Usher, and, therefore, that the Court of Appeals erred in holding, on the basis of Usher, that the claimant was entitled to benefits.
On remand, the Court of Appeals considered whether the labor dispute and the claimant’s employment were in the same “establishment.” The court noted that Alabama is one of a few states that use the term “establishment” as opposed to the phrase “factory, establishment, or other premises,” which is used by several other states. Wood, 40 Ala.App. at 447, 114 So.2d at 548-49. The Court distinguished Martin, supra, stating that in Martin, the coal mines and the railroads were separate operating divisions but that in Wood “no such sharpness of cleavage stands out between an ore mine and an ore plant.” Wood, 40 Ala.App. at 448, 114 So.2d at 550. The court set out seven factors relevant to its determination in defining an “establishment”: (1) functional integrality; (2) physical proximity (the claimant’s mine was only 700 feet from the plant in which the dispute arose); (3) collective-bargaining units; (4) wage-and-hour law; (5) managerial integrality; (6) personnel practices; and (7) economic factors. With special emphasis on factor 3 (membership in the same national union, governed by the same agreement) and factor 5 (the iron ore mines and conditioning plant shared the same general superintendent and assistant general superintendent, with different superintendents for the claimant’s mine and the conditioning plant), the court held that the labor dispute occurred at the “establishment” where the claimant was last employed. It also agreed with the Supreme Court that to hold otherwise would extend the disqualification statute beyond the legislative intention and would extend as well the holding in Martin.
In determining whether the strike occurred at the same “establishment” at which Hilley was last employed, we apply the factors considered by the Court in Wood. First, we note that there appears to be a high degree of functional integrality in that the Delphi manufacturing plants are structured to produce the components at a similar pace so that they will arrive “just in time” for installation into automobiles at an assembly plant. Regarding physical proximity, obviously the plants are some distance apart — the Delphi-Dayton plant is located in Dayton, Ohio. Hilley, the other Alabama claimants, and Delphi-Dayton workers are members of the same national union; however, they are members of separate local unions, with separate local collective-bargaining agreements. No evidence was presented as to wage- and-hour law or economic factors. Regarding managerial integrality, the Delphi plants share the same corporate headquarters, at which corporate strategies such as the just-in-time inventory system are developed. However, each Delphi plant has its own plant managers, who are responsible for all aspects of the plant’s business, including, among other things, its profit and its employees. The parties have not presented arguments as to the company’s personnel practices.
Considering these factors, as well as the precedent before us, we conclude that the Delphi-Dayton plant where the strike oc *173 curred is a separate establishment from the Delphi-Saginaw and Delphi-Harrison plants, where the claimants were last employed. The plants are functionahy integrated, but, as the Court of Appeals stated in Martin, “ ‘[integration is often present where plants are operated by entirely different owners.’ ” Martin, 251 Ala. at 157, 36 So.2d at 551 (quoting the decision of the Court of Appeals). We disagree with GM’s contention that the physical proximity of the plants is irrelevant. We consider it highly relevant. The cases previously decided by Alabama appellate courts involved plants in close physical proximity, such as within 700 feet of one another. Here the plants are several states and several hundred miles apart.
Regarding the collective-bargaining agreements, we note that the claimants, like the claimant in Wood, are members of the same national union. They share the same national collective-bargaining agreement between the UAW and GM. However, they are members of separate local unions, which have separate local collective-bargaining agreements. This case is different from Wood, in that the claimants in this case do not share a joint local collective-bargaining agreement with the workers on strike. GM places great emphasis on paragraph 118 of the national agreement between GM and the UAW. This paragraph states:
“The Union has requested this National Agreement in place of independent agreements for each bargaining unit covered hereby. Accordingly an authorized strike in one bargaining unit under this agreement which results in an interruption of the flow of material or services to operations in any other bargaining unit under this Agreement will be considered an authorized strike in any such affected bargaining unit.”
GM argues that, according to this paragraph, a strike at the Delphi-Dayton plant was also considered a strike at the Delphi-Saginaw and Delphi-Harrison plants. The purpose of this provision is unclear, because in fact it is undisputed that the separate local unions have separate local bargaining agreements. It is clear, however, that the UAW does not consider the Delphi-Saginaw and Delphi-Harrison plants to be on strike, because the claimants were not entitled to funds from the UAW strike-insurance fund. We do not find this provision of the agreement to control our determination here.
The Delphi-Dayton strike and the unemployment suffered by the claimants last employed at the Delphi-Harrison plant and the Delphi-Saginaw plant did not occur at the same “establishment.” Therefore, § 25-4-78 does not disqualify the claimants from receiving unemployment-compensation benefits. The trial court erred in reversing the board’s order awarding the claimants unemployment-compensation benefits.
The judgment is reversed and the cause is remanded for the trial court to enter a judgment consistent with this opinion.
REVERSED AND REMANDED.
ROBERTSON, P.J., and YATES, J., concur.
CRAWLEY and THOMPSON, JJ., concur in the result.

. Although estimates vary slightly, it appears that approximately 1,886 claimants agreed to be bound by this test case.

. Production of parts for non-GM customers continued.

. The Supreme Court expressly refused to approve that part of the opinion of the Court of Appeals holding that the claimants' unemployment was "directly due” to the labor dispute. Martin, 251 Ala. at 156, 36 So.2d at 555; see also United States Steel Corp. v. Wood, 40 Ala.App. 431, 438, 114 So.2d 533, 540 (1959).