JOHN R. CENNAMO, JR., ET AL. *v.* ADMINISTRATOR, UNEMPLOYMENT COMPENSATION ACT, ET AL.

SUPERIOR COURT FAIRFIELD COUNTY AT BRIDGEPORT FILE NO. 112238

AMERICO VOLPE ET AL. *v.* ADMINISTRATOR, UNEMPLOYMENT COMPENSATION ACT, ET AL.

SUPERIOR COURT FAIRFIELD COUNTY AT BRIDGEPORT FILE NO. 112239

FRANKLIN JUDSON ET AL. *v.* ADMINISTRATOR, UNEMPLOYMENT COMPENSATION ACT, ET AL.

SUPERIOR COURT FAIRFIELD COUNTY AT BRIDGEPORT FILE NO. 112240

MICHAEL A. MERCALDI ET AL. *v.* ADMINISTRATOR, UNEMPLOYMENT COMPENSATION ACT, ET AL.

SUPERIOR COURT FAIRFIELD COUNTY AT BRIDGEPORT FILE NO. 112241

ORANTE ANTIDOMRMI ET AL. *v.* ADMINISTRATOR, UNEMPLOYMENT COMPENSATION ACT, ET AL.

SUPERIOR COURT FAIRFIELD COUNTY AT BRIDGEPORT FILE NO. 112242

JOHN A. VITALE ET AL. *v.* ADMINISTRATOR, UNEMPLOYMENT COMPENSATION ACT, ET AL.

SUPERIOR COURT FAIRFIELD COUNTY AT BRIDGEPORT FILE NO. 112243

ARMAND FABRIZI ET AL. *v.* ADMINISTRATOR, UNEMPLOYMENT COMPENSATION ACT, ET AL.

SUPERIOR COURT FAIRFIELD COUNTY AT BRIDGEPORT FILE NO. 112244

Memorandum filed March 17, 1961

*Millard Kaufman,* of Bridgeport, for the appellants.

*Albert L. Coles,* attorney general, and *Harry Silverstone,* assistant attorney general, for the Administrator, Unemployment Compensation Act.

BORDON, J. There are seven appeals involved in these proceedings. Case No. 112238 involves sixteen employees; No. 112239 involves two employees; No. 112240 involves six employees; No. 112241 involves three employees; No. 112242 involves three employees; No. 112243 involves five employees; and No. 112244 involves two employees. All these are appeals by the administrator of the Unemployment Compensation Act from a decision of a panel of unemployment commissioners.

The decision of the court was arrived at after a laborious study of the finding and decision of the commissioners, the briefs of counsel and the voluminous transcript of the evidence before the commissioners. The claimants were all members of either the Hod Carriers Union B & C Local 665, A. F. L.,

or the Bricklayers, Masons and Plasterers Union, Local No. 2. The question for determination is whether the commissioners acted correctly in allowing benefits to certain of the employees of the various employers involved in this controversy, in view of the existence of a carpenters' union strike in the Bridgeport area against the said employers.

The transcript discloses that stoppage of work on the various projects and the resultant unemployment were due to the unwillingness of the employees to cross picket lines set up by the striking carpenters' union. On some of the jobs, work actually continued after the strike until pickets were set up. On some of the jobs, work could have continued if the claimants had shown a willingness to cross picket lines. On some of the jobs, work could not continue because of the absence of carpenters and supervisory personnel. The relations between the carpenters' union and the masons' union were not cordial, and this could have resulted in verbal disputes or violence, although there is no evidence of violence or threats of violence. The business agent for the masons' union advised his members not to cross the picket line in order to avoid disputes and possible violence and in order to adhere to union policy not to cross a picket line.

Whether or not there was an isolated case of a willingness to cross the picket line, or whether or not any of the employers sought vigorously to continue their projects, the undisputed fact stands out that the substantial factor leading to stoppage of work was the carpenters' union strike and the unwillingness of substantially all of the claimants to cross the picket lines set up by the strikers on the various projects. By mincing of words or by the turn of a phrase it could be made to appear that employers shut down projects not affected by pickets, but when all of the evidence is weighed

and the realities of the situation separated from the unreal, the conclusion is inescapable that all employers had work for their employees and would have supplied it if the picket lines had not forced cessation. Except for Strickland and Moran, who are not parties here, not one claimant testified that he was available for work in spite of the pickets or that he would have crossed the picket line. It may well be that, without a strike, there would not have been work for some of the claimants during the week ending May 16. It is assumed that some of the employers may not have had work for both weeks of the strike. But had the strike terminated after one week, certainly the unperformed work of the week ending May 9 would still have been available for such employees during the week ending May 16.

Under § 31-236, an employee is ineligible for benefits if his unemployment is due to a labor dispute in which he is participating. *Lanyon* v. *Administrator,* 139 Conn. 20, 33. It has been held that when an employee has the choice of crossing a picket line or of refusing to do so because of his adherence to the written or unwritten law of his union, his unemployment, if any, is voluntary. This choice, which members of organized labor are frequently called upon to make, has always been deemed a voluntary one. *Baldassaris* v. *Egan,* 135 Conn. 695, 699. If fear of bodily harm is the decisive factor in an employee's refusal to cross the picket line, his unemployment will be deemed to be involuntary. *Lanyon* v. *Administrator,* supra.

With the law as above stated in mind, the question is whether the court can substitute its own finding and conclusions for those of the commissioners. The *Lanyon* case, supra, 28, holds that the court does not try the matter de novo. It is not the function of the court to adjudicate questions of fact or

to substitute its own conclusions for those of the commissioners. It may only determine whether the commissioners acted unreasonably, arbitrarily or illegally. *Hoffman* v. *Kelly,* 138 Conn. 614, 617. However, if the transcript of the evidence discloses findings and conclusions not warranted by the evidence, the court may, under §§ 322, 312 and 397 of the Practice Book, order the commissioners to make such corrections as the evidence justifies. *Senzamici* v. *Waterbury Castings Co.,* 115 Conn. 446, 450. While the court cannot make a finding as a substitute for that of the commissioners, it may, when the evidence calls for it, remand the case to the commissioners for a rehearing and finding of facts in accordance with the evidence. *Lanyon* v. *Administrator,* supra, 34.

Accordingly, the court feels that many of the claims made in the motion to correct the finding ought to have been granted because they are admitted or undisputed facts. The motion to correct the finding contains twenty-three paragraphs. Several of them have been granted by the commissioners and several withdrawn or not pressed. By the process of elimination, there appear to be five reasons left which the court is called to pass upon. These are contained in paragraphs 17 to 21 and concern themselves with the failure of the claimants to offer evidence that they were not participating in the labor dispute by showing a willingness to cross the picket line.

The rule laid down in the *Lanyon* case, supra, 32, is that the burden rested on each plaintiff to establish that as an individual he was not participating in the labor dispute. The court recalls no evidence in the transcript showing that any of the plaintiffs have sustained that burden of proof. Accordingly, all cases are remanded to the commissioners for further hearings so that it may be determined

through evidence whether any of the plaintiffs can sustain the burden of proof of their nonparticipation in the labor dispute. As for the apprentices, it is obvious that they could not work without carpenters, laborers or masons. They are, therefore, entitled to benefits if they produce evidence that they would have crossed the picket line if work was available for them. The cases involving apprentices are, therefore, likewise remanded for further hearings.

The administrator also appeals because of the filing of a corrected decision that removes fear of physical harm as a reason for allowing benefits and substitutes nonparticipation in the labor dispute. Certainly the commissioners have a right to correct their decision to conform to their idea of what the evidence has revealed. However, the corrected decision should likewise be based on evidence. The corrected decision does not suggest that the affected claimants have sustained the burden cast upon them to prove nonparticipation. The case of *Brechu* v. *Rapid Transit Co.,* 20 Conn. Sup. 209 does not seem to apply. In that case, the employer voluntarily shut down its operations because of fear of strike. The employees reported for work and were available for work during the entire period of their unemployment. In the instant cases, unemployment was actually due to a strike which would not deprive the employees of benefits unless they participated in the dispute by refusing to cross the picket lines. This they must prove.

In case No. 112240, there seems to be no evidence to sustain paragraph 30 of the finding. It is accordingly ordered that paragraphs 26 and 27 of the motion to correct should have been granted, and it is so ordered. After this correction is accomplished, the reasons for remanding for further evidence will likewise apply to these employees.

308

All cases are remanded to the commissioners for the purposes above stated. To that extent the appeals are sustained.