MONROE, Judge.
Jerry Hilley and certain other employees of two General Motors plants in Alabama, those being the Delphi-Harrison radiator plant in Tuscaloosa and the Delphi-Saginaw steering plant in Athens, were laid off because of decreased productivity at the Delphi chassis plant in Dayton, Ohio (“Delphi-Dayton”). The Dayton plant’s productivity decreased because of a strike by members of the International Union, United Automobile, Aerospace and Agricultural Workers (“UAW”) Local 696 in Dayton. Hilley and other claimants applied to the Alabama Department of Industrial Relations (“DIR”) for unemployment-compensation benefits, and their claims were denied. A large number of claimants appealed from DIR’s decision. Rather than conducting more than a thousand hearings, DIR, the claimants, and GM agreed to conduct a single hearing or “test case.”[1] Counsel for GM and counsel for the claimants selected Hilley to act as the test-case claimant representing all similarly situated claimants. The parties also agreed to bypass the appeals referee stage and proceed to the DIR State Board of Appeals (“Board”). After holding a hearing, the Board issued an opinion on December 17, 1996, determining that Hilley and the other claimants were entitled to unemployment compensation benefits. On January 23, 1997, GM appealed this decision to the Circuit Court of Jefferson County. The Jefferson Circuit Court transferred the case to the Circuit Court of Tuscaloosa County. On June 15, 1998, the Tuscaloosa Circuit Court entered an order reversing the Board’s award of benefits. Hilley appealed.
Hilley argues that the trial court was without jurisdiction to hear GM’s appeal from the decision of the Board. The relevant statute provides in pertinent part as follows:
“Within 30 days after the decision of the-Board of Appeals has become final, any party to the proceeding including the director who claims to be aggrieved by the decision may secure a judicial review thereof by filing a notice of appeal in the circuit court of the county of the residence of the claimant.... In such action, the notice of appeal need not be verified, but shall state the grounds upon which a review is sought.”
§ 25-4-95, Ala.Code 1975 (emphasis added). Hilley states that GM’s notice failed to comply with two of this section’s requirements.
First, Hilley contends that the notice of appeal filed in the Jefferson Circuit Court should have been dismissed because it did not state the grounds upon which relief was sought. GM’s notice of appeal stated that the Board’s decision was “incorrect in law and fact.” This court has previously held that it is sufficient for the notice of appeal to state merely that the *152 Board’s decision was incorrect under the facts or the law. Donaldson v. State Dep’t of Indus. Relations, 439 So.2d 1301 (Ala.Civ.App.1983). Thus, the ground stated by GM was sufficient.
Hilley also argues that GM’s notice of appeal was not filed in the county of his residence. Although it is undisputed that Hilley is a resident of Tuscaloosa County, GM stated in its notice of appeal to Jefferson Circuit Court that Hilley was a resident of Jefferson County. Hilley moved the Jefferson Circuit Court to dismiss the appeal on the ground that the court lacked jurisdiction because Hilley was not a resident of Jefferson County. GM objected to the dismissal and requested that the court deny Hilley’s motion or transfer the case to Tuscaloosa County. The Jefferson Circuit Court opted for the latter and transferred the case to Tuscaloosa County. Hilley then moved the Tuscaloosa Circuit Court to dismiss the appeal on the same grounds, arguing that the Jefferson Circuit Court should have dismissed the case rather than transfer it. The Tuscaloosa Circuit Court held a hearing and ultimately entered an order denying Hilley’s motion on the ground that the appeal was properly filed in the county of residence of any of the participating claimants.
In Director of the State of Alabama Department of Industrial Relations v. Nolin, 374 So.2d 903 (Ala.Civ.App.1979), this court held that the trial court in Blount County did not have jurisdiction to hear the claimant’s appeal from the Board’s decision because the claimant' was a resident of St. Clair County at the time the appeal was filed. Reasoning that the unemployment compensation laws are solely a creature of statute, this court held that the relevant portion of § 25-4-95 was one of jurisdiction rather than venue and that the failure to comply with it necessitated the dismissal of the appeal. Nolin has been followed by this court in several cases, such as in Cruce v. Demarco Concrete & Block Co., 380 So.2d 900 (Ala.Civ.App.1980), Security Engineers, Inc. v. Anderson, 421 So.2d 1298 (Ala.Civ.App.1982), and most recently in Tyson Foods, Inc. v. Thompson, 719 So.2d 847 (Ala.Civ.App.1998). In all of these cases, this court held that, pursuant to § 25-4-95, the trial court must dismiss an appeal that is not filed in the county of the claimant’s residence.
GM states that Hilley’s residence is close to the Tuscaloosa-Jefferson County line and that Hilley uses a postal Zip Code that covers a portion of Jefferson County. However, GM does not dispute that Hilley is a resident of Tuscaloosa County. We note that during oral argument before this court, counsel for GM stated that GM played a large role in selecting Hilley to be the test-case claimant. In Tyson Foods, supra, this court held that the Marshall Circuit Court had properly dismissed the employer’s appeal, because the claimant’s physical residence was in Blount County even though her address indicated that she lived in Marshall County. Following the Nolin line of cases, we must hold that the Jefferson court erred in not dismissing the appeal for lack of subject-matter jurisdiction. See Tyson Foods, supra.
Because the Jefferson Circuit Court did not have subject-matter jurisdiction, its judgment in this case is void. Therefore, the trial court’s judgment of June 15, 1998, is vacated.
Although we vacate the judgment of the trial court, we take this opportunity to discuss the meaning of the term “establishment” in § 25-4-78, Ala.Code 1975. That statute provides that people who meet certain criteria are disqualified from receiving unemployment-compensation benefits. Hilley contends that the Tuscaloosa Circuit Court misapplied § 25-4-78.
*153 Section 25-4-78 provides in pertinent part:
“An individual shall be disqualified for total or partial unemployment:
“(1) Labor Dispute in Place of Employment. — For any week in which his total or partial unemployment is directly due to a labor dispute still in active progress in the establishment in which he is or was last employed. For purposes of this section only, the term ‘labor dispute’ includes any controversy concerning terms, tenure or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing or seeking to arrange terms or conditions of employment, regardless of whether the disputants stand in the proximate relation of employer and employee. This definition shall not relate to a dispute between an individual worker and his employer.”
“For a claimant to be disqualified under § 25-4-78(1), ‘five separate and distinct conditions must coincide, namely (1) his unemployment must be directly due, (2) to a labor dispute, (3) in active progress, (4) in the establishment, (5) in which he was last employed.’” Flowers v. Director, Dep’t of Indus. Relations, 435 So.2d 72, 74 (Ala.Civ.App.1981), rev’d in part on other grounds, Ex parte Flowers, 435 So.2d 76 (Ala.1983), quoting Davis v. Pickett, 412 So.2d 1225 (Ala.Civ.App.1981). The unemployment-compensation statute was created to provide a remedial measure for the benefit of the unemployed worker. Polk v. State Dep’t of Industrial Relations, 413 So.2d 1164 (Ala.Civ.App.1982). Thus, the statute is to be liberally construed in favor of the claimant. Id. The employer has the burden of proving any disqualification under section § 25-4-78(1) of the Unemployment Compensation Act. Ex parte Flowers, 435 So.2d 76 (Ala.1983).
The Tuscaloosa Circuit Court determined that Hilley’s unemployment was directly due to a labor dispute in the establishment in which he was employed. Thus, the court ruled that he was disqualified from receiving unemployment-compensation benefits. The parties disagree as to the proper interpretation of the term “establishment.”
The record shows the following pertinent facts concerning GM’s operations. GM is made up of five business sectors, one of which is Delphi Automotive Systems (“Delphi”). Delphi manufactures automotive components for GM assembly plants in North America. The two Alabama GM plants involved in this case are Delphi plants. The Delphi-Harrison plant in Tuscaloosa produces thermal systems and the Delphi-Saginaw plant in Athens produces steering systems. The Delphi-Dayton plant, at which the strike occurred, produces braking systems. Delphi plants utilize a “just in time” inventory system, meaning that components are manufactured in accordance with the production schedules of the assembly plants. Under this system, each Delphi plant produces a component and immediately ships it in a special container and special tray to an assembly plant, so that the component arrives at the assembly plant “just in time” for installation in an unfinished car. The empty containers and trays are then returned to the Delphi plants for reuse.
The UAW Local 696 strike at the Delphi-Dayton plant, which began on March 5, 1996, caused that plant to stop production of GM parts.[2] This in turn caused the assembly plant(s) to run out of braking systems to install in automobiles, and the assembly line ground to a stop. Because *154 the assembly line(s) stopped, and because of the “just in time” inventory system, the assembly plant(s) had no demand for other components. Thus, the Delphi plants manufacturing the components were forced to cease production, in turn causing thousands of employees to be laid off from Delphi plants across the country. Workers at the Tuscaloosa and Athens plants were laid off in stages after the strike began and were called back in stages after the strike ended on March 22,1996.
The record is clear that only the members of UAW Local 696 in Dayton were on strike. No workers in the Alabama plants were on strike and no Alabama workers had an opportunity to vote on the strike. In fact, the Alabama workers were ready, willing, and able to work at all times relevant to this case.
As noted above, the claimant is not entitled to unemployment-compensation benefits if his unemployment is directly due to a labor dispute in the establishment in which he was last employed. The Alabama statute does not define the term “establishment,” so we must look to relevant caselaw in an attempt to define it. Our review begins with Tennessee, Coal, Iron & R.R. Co. v. Martin, 251 Ala. 153, 36 So.2d 547 (1948), in which the Supreme Court affirmed the Court of Appeals’ decision holding that the claimants should not be disqualified from receiving unemployment compensation.[3] In Martin the claimants, coal miners, were out of work because of a strike by steel workers and ore miners.[4] Although all three groups worked for Tennessee, Coal, Iron, & Railroad Company, each group had its own separate and distinct labor union. The coal workers were affiliated with the United Mine Workers of America, the ore miners belonged to the International Union of Mine, Mill, and Smelter Workers, and the furnace and mill workers’ union was the United Steel Workers of America. See Martin, 251 Ala. at 159, 36 So.2d at 553 (quoting the decision of the Court of Appeals, Bricken, P.J., dissenting). The Court of Appeals, in interpreting the word “establishment,” reviewed Spielmann v. Industrial Commission, 236 Wis. 240, 295 N.W. 1 (1940), and Chrysler Corp. v. Smith, 297 Mich. 438, 298 N.W. 87 (1941), overruled in part by Park v. Appeal Bd. of Michigan Employment Sec. Comm’n, 355 Mich. 103, 94 N.W.2d 407 (1959). The Spielmann court determined that because of the “functional integrality, general unity, and physical proximity of the two plants they constituted one establishment.” Martin, 251 Ala. at 156, 36 So.2d at 550 (quoting decision of the Alabama Court of Appeals). In Chrysler, the Michigan court used tests of functional integrality and coordination in interpreting the word “establishment.” The Alabama Court of Appeals determined that “the tests of unity of management and integrality of function, while furnishing aid in determining the true meaning of the word ‘establishment’ as it appears in our Act, are essentially only rule of thumb tests.” Martin, 251 Ala. at 157, 36 So.2d at 551, (quoting decision of the Court of Appeals). The Supreme Court approved of the Court of *155 Appeals’ “observations” on the Spielmann and Chrysler cases, but added the additional observation that “no stress appears to have been made by the courts in those cases upon the matter of liberal construction of the statute and strict construction of the disqualification provision.” Martin, 251 Ala. at 162, 36 So.2d at 555. The Court of Appeals, using the common understanding and usage of the words in Alabama’s Unemployment Compensation Act, ultimately held that the coal mines in which the claimants worked were an establishment separate from the establishment or establishments in which a labor dispute was in progress. In affirming this decision, the Supreme Court stated that the best definition of the word “establishment” was “a place of business” as defined by Webster’s New International Unabridged Dictionary (2d ed.), Martin 251 Ala. at 162, 36 So.2d at 554.
The next case in which the Supreme Court examined the term “establishment” was United States Steel Corp. v. Wood, 269 Ala. 5, 114 So.2d 551 (1959), in which the Supreme Court reversed the Court of Appeals’ decision at 40 Ala.App. 431, 114 So.2d 533 (1958). In Wood, the claimant worked as an iron ore miner for the Tennessee Coal and Iron Division of United States Steel Corporation (“U.S. Steel”). The location where the claimant worked included iron ore mines, an ore conditioning plant, and furnaces, as well as a railroad connecting them. The conditioning plant workers and the transportation workers went on strike, and, as a result, the miners were laid off. The iron ore miners and the conditioning plant workers were members of the United Steel Workers of America, C.I.O. Both groups were covered by the United Steel Workers of America national collective-bargaining agreement, but they belonged to separate local unions. However, according to the testimony of the assistant general superintendent of the ore mines and quarries of U.S. Steel, the five local unions had a joint collective-bargaining agreement. See Wood, 40 Ala.App. at 448, 114 So.2d at 539, 548 (chart). The claimant did not participate in the strike and did not have any input in the decision of the conditioning plant workers to go on strike. The Court of Appeals, citing Usher v. Department of Indus. Relations, 261 Ala. 509, 75 So. 165 (1954), determined that the claimant could not be disqualified from receiving unemployment-compensation benefits, because he was not a member of the local union on strike and could not have prevented the strike. Wood, 40 Ala.App. at 434, 438-39, 114 So.2d at 536, 540-41. The court also stated that it was difficult to determine whether the strike caused the unemployment or whether the employer’s actions in laying off workers caused the unemployment. Thus, the court determined that it need not address the question whether the strike occurred at the “establishment” where the claimant was last employed.
However, the Supreme Court reversed the judgment of the Court of Appeals, stating that the Court of Appeals had extended the holding of Usher, supra, beyond its intended meaning. In Usher, the claimant was a member of the Brotherhood of Locomotive Firemen and Engine-men, and the striking workers were members of the United Steel Workers Union, C.I.O. Thus, the claimant and the striking workers were members of different national unions that had no joint affiliation. Yet, in Wood, the claimant was a member of the same national union that was governed by the same national agreement, and the strike was terminated by instructions of the chief executive officer of that national union. The Supreme Court determined that these facts distinguished Wood from Usher, and, therefore, that the Court of Appeals erred in holding that the claimant *156 was entitled to benefits on the basis of Usher.
On remand, the Court of Appeals considered whether the labor dispute and the claimant’s employment were in the same “establishment.” The court noted that Alabama is one of a few states that uses the term “establishment” as opposed to the phrase “factory, establishment, or other premises,” which is used by several other states. Wood, 40 Ala.App. at 447, 114 So.2d at 548-49. The Court distinguished Martin, supra, stating that in Martin the coal mines and the railroads were separate operating divisions but that in Wood “no such sharpness of cleavage stands out between an ore mine and an ore plant.” Wood, 40 Ala.App. at 448, 114 So.2d at 550. The court set out seven factors relevant to its determination in defining an “establishment”: (1) functional integrality; (2) physical proximity (the claimant’s mine was only 700 feet from the plant in which the dispute arose); (3) collective bargaining units; (4) wage-and-hour law; (5) managerial integrality; (6) personnel practices; and (7) economic factors. With special emphasis on factor 3 (membership in the same national union, governed by the same agreement) and factor 5 (the iron ore mines and conditioning plant shared the same general superintendent and assistant general superintendent, with different superintendents for the claimant’s mine and the conditioning plant), the court held that the labor dispute occurred at the “establishment” where the claimant was last employed. It also agreed with the Supreme Court that to hold otherwise would extend the intention of the disqualification statute as well as the holding in Martin.
In determining whether the strike occurred at the same “establishment” at which Hilley was last employed, we apply the factors considered by the Court in Wood. First, we note that there appears to be a high degree of functional integrality in that the Delphi manufacturing plants are structured to produce the components at a similar pace so that they will arrive “just in time” for installation into automobiles at an assembly plant. Regarding physical proximity, obviously the plants are some distance apart, as the Delphi-Dayton plant is located in Dayton, Ohio. Hilley, the other Alabama claimants, and Delphi-Dayton workers are members of the same national union; however, they are members of separate local unions, with separate local collective bargaining agreements. No evidence was presented as to wage-and-hour law or economic factors. Regarding managerial integrality, the Delphi plants share the same corporate headquarters, at which corporate strategies such as the “just in time” inventory system are developed. However, the Delphi plants have their own individual plant managers, who are responsible for all aspects of the plant’s business, including, among other things, its profit and its employees. The parties have not presented arguments as to the company’s personnel practices.
Considering these factors, as well as the precedent before us, we conclude that the Delphi-Dayton plant where the strike occurred is a separate establishment from the Delphi-Saginaw and Delphi-Harrison plants, where the claimants were last employed. Although the plants are functionally integrated, as the Court of Appeals stated in Martin, “ ‘[^Integration is often present where plants are operated by entirely different owners.’ ” Martin, 251 Ala. at 157, 36 So.2d at 551 (quoting the decision of the Court of Appeals). We disagree with GM’s contention that the physical proximity of the plants is irrelevant. We consider it highly relevant. The cases previously decided by Alabama appellate courts involved plants in close *157 physical proximity, such as within 700 feet of one another. Here the plants are several states and several hundred miles apart.
Regarding the collective-bargaining agreements, the claimants, like the claimant in Wood, are members of the same national union. They share the same national collective-bargaining agreement between UAW and GM. However, they are members of separate local unions, which have separate local collective-bargaining agreements. This case is different from Wood, in that the claimants in this case do not share a joint local collective-bargaining agreement with the workers on strike. GM places great emphasis on paragraph 118 of the national agreement between GM and the UAW. This paragraph states:
“The Union has requested this National Agreement in place of independent agreements for each bargaining unit covered hereby. Accordingly an authorized strike in one bargaining unit under this agreement which results in an interruption of the flow of material or services to operations in any other bargaining unit under this Agreement will be considered an authorized strike in any such affected bargaining unit.”
GM argues that, according to this paragraph, a strike at the Delphi-Dayton plant was also considered a strike at the Delphi-Saginaw and Delphi-Harrison plants. The purpose of this provision is unclear, because in fact it is undisputed that the separate local unions have separate local bargaining agreements. It is clear, however, that the UAW does not consider the Delphi-Saginaw and Delphi-Harrison plants to be on strike, because the claimants were not entitled to funds from the UAW strike-insurance fund. We do not find this provision of the agreement to control our determination here.
The Delphi-Dayton strike and the unemployment suffered by the claimants last employed at the Delphi-Harrison plant and the Delphi-Saginaw plant did not occur at the same “establishment.” Therefore, § 25-4-78 does not disqualify the claimants from receiving unemployment-compensation benefits.
For the reason stated earlier in this opinion, the judgment of the trial court is vacated, and the decision of the Board is reinstated.
JUDGMENT OF THE CIRCUIT COURT VACATED; DECISION OF THE BOARD OF APPEALS REINSTATED.
ROBERTSON, P.J., and YATES and THOMPSON, JJ., concur specially.
CRAWLEY, J., dissents.

. Although estimates vary slightly, it appears that approximately 1,886 claimants agreed to be bound by this test case.

. Production of parts for non-GM customers continued.

. In Martin, the Supreme Court reprinted the entire majority opinion of the Court of Appeals and part of Presiding Judge Bricken’s dissent. Our citations are to the Supreme Court’s opinion and are noted as such. The Court of Appeals decision can be found in its entirety at Tennessee, Coal, Iron & R.R. Co. v. Martin, 33 Ala.App. 502, 36 So.2d 535 (1948).

. The Supreme Court expressly refused to approve that part of the opinion of the Court of Appeals holding that the claimants’ unemployment was "directly due” to the labor dispute. Martin 36 So.2d at 555; see also United States Steel Corp. v. Wood, 40 Ala.App. 431, 438, 114 So.2d 533, 540 (1958).